[S. F. No. 174.   Department Two.—July 17, 1896.]

## M. S. JEFFERS ET AL., APPELLANTS, v. EASTON, ELDRIDGE & CO. ET AL., RESPONDENTS.

LANDLORD AND TENANT—ASSIGNMENT OF LEASE—SALE—UNPAID PURCHASE MONEY—WANT OF TITLE IN LESSOR—FAILURE OF CONSIDERATION.— Where the whole of the term of a leasehold estate is assigned, there is no relation of landlord and tenant between the assignor and the assignee, but only that of seller and purchaser, and if the original lessor had no title when the lease was made, and the assignee is compelled to attorn to the holders of the legal title to prevent eviction, there is a failure of consideration for the assignment of the lease, and the assignor cannot recover any unpaid installments of purchase money.

ID.—ESTATES FOR YEARS—PERSONAL PROPERTY—RULES GOVERNING ASSIGNMENTS.—An estate for years is personal property—a chattel real; and the rules which govern conveyances of real property do not apply to assignments of estates for years, but they are governed generally by the rules applicable to sales of personal property.

ID.—SALES—CAVEAT EMPTOR—IMPLIED WARRANTY OF TITLE—REMEDY OF PURCHASER FOR FAILURE OF TITLE.—In sales of personal property, including assignments of estates for years, though the rule of *caveat emptor* applies to the quality of the thing sold, the seller impliedly

warrants the title, without reference to the knowledge or want of knowledge of the vendor as to the real state of the title, or whether he did or did not make a distinct affirmation of his title; and, upon the total breach of a warranty of title, the purchaser may recover the purchase money paid, and has a good defense against an action by the seller to recover the purchase money.

ID.—SURRENDER OF POSSESSION TO PARAMOUNT OWNER—BURDEN OF PROOF.—One who receives the possession of property upon a sale or other contract from a person who has no title to it, may yield it to the true owner on demand, without waiting for an eviction; but, in such case, he assumes the burden of proving that the one to whom he yielded the possession had a paramount title.

ID.—DENIAL OF TITLE—TERMINATION OF ESTOPPEL.—The estoppel of one who has received the possession of property from another to deny the title of the person from whom he received it, terminates when possession is yielded upon demand of the true owner, which the possessor could not legally resist.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. CHARLES W. SLACK, Judge.

*M. M. Estee*, for Appellants.

A tenant cannot dispute his landlord's title. (Civ. Code, sec. 1948; *Hoen* v. *Simmons*, 1 Cal. 119; 52 Am. Dec. 291; *Morse* v. *Roberts*, 2 Cal. 515; *Ramires* v. *Kent*, 2 Cal. 558; *Tewksbury* v. *Magraff*, 33 Cal. 237; *Peralta* v. *Ginochio*, 47 Cal. 459; *Holloway* v. *Galliac*, 47 Cal. 474; *Lattaillade* v. *Santa Barbara Gas Co.*, 58 Cal. 4; *Louer* v. *Hummel*, 21 Pa. St. 450; *Bigler* v. *Furman*, 58 Barb. 545; *Carpenter* v. *Thompson*, 3 N. H. 204; 14 Am. Dec. 348.) Defendant cannot claim want of consideration for the assignment until it has restored the possession of the premises to its assignor. (*Hammond* v. *Wallace*, 85 Cal. 522; 20 Am. St. Rep. 239; *Patten* v. *Deshon*, 1 Gray, 325; *Blake* v. *Sanderson*, 1 Gray, 335; *Wall* v. *Hinds*, 4 Gray, 256; 64 Am. Dec. 64; *Babcock* v. *Scoville*, 56 Ill. 465; *Jackson* v. *Port*, 17 Johns. 479; *McLennan* v. *Grant*, 8 Wash. 603; *Bulkley* v. *Devine*, 127 Ill. 406; Civ. Code, sec. 1948.) There being no deception, there was no want of consideration, and defendant is bound by its contract. (*Codman* v. *Jenkins*, 14 Mass. 96; *Watertown* v. *White*, 13

Mass. 481; 2 Abridgment of American Law, 443; *Jackson* v. *Davis*, 5 Cow. 129; 15 Am. Dec. 451; *Jackson* v. *Harsen*, 7 Cow. 325; 17 Am. Dec. 517; *Thompson* v. *Clark*, 7 Pa. St. 62; *Presstman* v. *Stilljacks*, 52 Md. 647.) Giving possession was sufficient consideration for the assignment. (Civ. Code, sec. 1605; 5 Lawson's Rights, Remedies, and Practice, 3762, 3763, and cases cited; *Kelly* v. *Lynch*, 22 Cal. 661; *White* v. *Baxter*, 71 N. Y. 254; *Lewis* v. *Seabury*, 74 N. Y. 409; 30 Am. Rep. 311; *Conover* v. *Stillwell*, 34 N. J. L. 54; *Bradshaw* v. *McLoughlin*, 39 Mich. 480.) When a lessee surrenders possession without a legal contest, he assumes the burden of proving that the person entering had title paramount. (*Greenvault* v. *Davis*, 4 Hill, 643; *Cowan* v. *Silliman*, 4 Dev. 46; *Hamilton* v. *Cutts*, 4 Mass. 349; 3 Am. Dec. 222; *Booth* v. *Starr*, 5 Day, 282; *Camarillo* v. *Fenlon*, 49 Cal. 202.) The entry into possession of the assignee under the assignment creates the relation of landlord and tenant between him and the lessor. (Code Civ. Proc., sec. 326; *Bonetti* v. *Treat*, 91 Cal. 223; *Mauldin* v. *Cox*, 67 Cal. 387; *Standley* v. *Stephens*, 66 Cal. 541; *McLeran* v. *Benton*, 43 Cal. 467; *Abbey Homestead Assn.* v. *Willard*, 48 Cal. 615; *Mecham* v. *McKay*, 37 Cal. 155; *Springs* v. *Schenck*, 99 N. C. 551; 6 Am. St. Rep. 552; *Jackson* v. *Miller*, 6 Wend. 228; 21 Am. Dec. 316.) But the lessee remains liable on his agreement to pay rent. (6 Lawson's Rights, Remedies, and Practice, sec. 2845; *Bonetti* v. *Treat, supra; Mason* v. *Smith*, 131 Mass. 510; *Greenleaf* v. *Allen*, 127 Mass. 248; *Wall* v. *Hinds*, 4 Gray, 256; 64 Am. Dec. 64; *Washington etc. Gas Co.* v. *Johnson*, 123 Pa. St. 576; 10 Am. St. Rep. 553; *Lodge* v. *White*, 30 Ohio St. 569; 27 Am. Rep. 492; *Bailey* v. *Wells*, 8 Wis. 141; 76 Am. Dec. 233; Gear on Landlord and Tenant, sec. 125, note 9.) As George Hyde always had been in possession of the property and treated it as his own, with the knowledge and consent of Mrs. Hyde, she is estopped from denying the validity of his acts. (Taylor on Landlord and Tenant, sec. 84; Code Civ.

Proc., sec. 326; *Talbert v. Singleton,* 42 Cal. 395; *Thompson v. Pioche,* 44 Cal. 508.

*Charles F. Hanlon,* for Respondents.

Easton, Eldridge & Co. are not liable for rent until plaintiffs have paid it to the landlord. (*Wolveridge v. Steward,* 1 Cromp. & M. 656; *Martineau v. Steele,* 14 Wis. 272; *Burnett v. Lynch,* 5 Barn. & C. 589; *Moule v. Garrett,* L. R. 7 Ex. 101; *Sutliff v. Atwood,* 15 Ohio St. 194, and cases cited; *Farrington v. Kimball,* 126 Mass. 314; 30 Am. Rep. 680; *Humble v. Langston,* 7 Mees. & W. 517; *McHenry v. Carson,* 41 Ohio St. 212; Civ. Code, sec. 822.) Not only an assignee, but even a tenant, can dispute the title of the landlord, where he was induced to accept the lease under a mistake as to the true title. (Bigelow on Estoppel, 5th ed., 523, 527; *Rogers v. Pitcher,* 6 Taunt. 202; *Gregory v. Doidge,* 3 Bing. 474; *Carter v. Marshall,* 72 Ill. 611; *Claridge v. Mackenzie,* 4 Man. & G. 143; *Pacific etc. Ins. Co. v. Stroup,* 63 Cal. 153; *Swift v. Dean,* 11 Vt. 323; 34 Am. Dec. 693; *Shultz v. Elliott,* 11 Humph. 186; *Tewksbury v. Magraff,* 33 Cal. 244; *Peralta v. Ginochio,* 47 Cal. 460; *Palmtag v. Doutrick,* 59 Cal. 167; 43 Am. Dec. 245; *Morse v. Goddard,* 13 Met. 179; 46 Am. Dec. 728; *Holloway v. Galliac,* 47 Cal. 476; *Oneto v. Restano,* 89 Cal. 68; *Franklin v. Merida,* 35 Cal. 567; 95 Am. Dec. 129.) There is no consideration now for the payment of the purchase price of the lease. (*Morse v. Goddard, supra; Franklin v. Merida, supra; Hamilton v. Cutts,* 4 Mass. 349.) There was no relation of landlord and tenant between the assignor and assignee. (*Smiley v. Van Winkle,* 6 Cal. 605.) A constructive eviction may be pleaded and proven with the same force and effect as an actual ouster by title paramount. (Deering's Civ. Code, sec. 1948, note, and cases cited; *Merryman v. Bourne,* 9 Wall. 600; *Thompson v. Pioche,* 44 Cal. 508; *Moffat v. Strong,* 9 Bosw. 57; Bigelow on Estoppel, 5th ed., 521, 522, 528–30; *Sprague v. Baker,* 17 Mass. 586; *Carter v. Denman,* 23 N. J. L. 271; *Parker v. Dunn,* 2 Jones, 203; *Chambers v. Pleak,* 6 Dana,

428; 32 Am. Dec. 78; *Carpenter* v. *Parker,* 3 Com. B., N. S., 243.)   George Hyde is completely stripped of his title by a deed with a condition subsequent.   (2 Devlin on Deeds, secs. 958, 959; *Memphis etc. R. R. Co.* v. *Neighbors,* 51 Miss. 412; *Spect* v. *Gregg,* 51 Cal. 198; *Shattuck* v. *Hastings,* 99 Mass. 23; Warvelle on Vendors, 444; *Vail* v. *Long Island etc. R. R. Co.,* 106 N. Y. 283; 60 Am. Rep. 449; *Alemany* v. *Daly,* 36 Cal. 90; *Sheppard* v. *Thomas,* 26 Ark. 617; *Abbott* v. *Osgood,* 58 Me. 73; *Webster* v. *Cooper,* 14 How. 501; *Guild* v. *Richards,* 82 Mass. 309; *Stone* v. *Ellis,* 9 Cush. 95; *Spofford* v. *True,* 33 Me. 283; 54 Am. Dec. 621.)

McFARLAND, J.—This is an action brought by the plaintiffs, Jeffers & Wright, to recover certain moneys alleged to be due upon an assignment by them of a certain leasehold interest to the defendant Easton, Eldridge & Co., a corporation.   Certain individual defendants are also sued.   Judgment went for defendants, and plaintiffs appeal from the judgment and from an order denying a new trial.

In 1886 one George Hyde executed to the plaintiffs, Jeffers & Wright, a written lease of certain real property in the city of San Francisco, for a term of eight years and six months, at a monthly rental of $175.   Plaintiffs went into possession of the leased premises; and in 1889 they procured from Hyde an extension of the term of the lease until January 1, 1896.   On February 1, 1890, the plaintiffs and the said corporation executed a written instrument by which the plaintiffs sold, assigned, and transferred said leasehold interest to said corporation; and said corporation promised to pay to Hyde the said rent of $175 per month, and also to pay plaintiffs, in consideration of said assignment, the sum of $275 per month until the said first day of January, 1896.   Plaintiffs delivered possession of the said premises to said defendant corporation; and the latter paid the $175 to Hyde and the said $275 to plaintiffs up to and including the month of August, 1890, but since

then have refused to pay plaintiffs any money whatever. This action is brought to recover said two sums of money for each of the seven months, commencing with September, 1890, and ending with March, 1891.

The lessor, George Hyde, died in August, 1890; and soon afterward his widow, Ellen J. Hyde, and certain of her children, informed the said corporation that at the time of the execution of said lease, and of said extension thereof, they were the owners in fee of said leased premises, and ever since had been such owners; and that at said times the said George Hyde had no right, title, or interest to or in said premises, and had no right or authority to make said lease or said extension thereof; and they demanded that the corporation give up possession to them, and threatened to put the said corporation out of possession, and employed an attorney to do so. This was the first intimation which said defendant had that said leasehold was not perfectly valid—as it had been represented to be by plaintiffs. The defendant immediately consulted its attorneys, who, after investigation, advised it that the title to the leasehold interest was worthless, and that an action by Mrs. Hyde and her children for possession, or for use and occupation of the premises, could not be successfully defended. There was then considerable negotiation between the defendant and the plaintiffs about the defect in the title, which appears to have resulted in nothing definite. Defendant then told Mrs. Hyde to take possession and claims that she did it; but defendant did not remove its effects from the premises and Mrs. Hyde did not take actual possession; but, without going out of actual possession, the defendant took a lease of the premises from Mrs. Hyde and said children, and has since remained in possession as their tenants.

The court found that on or about June 30, 1866, the said George Hyde was seised in fee and possessed of the said leased premises; and on that day executed a certain written instrument marked "Exhibit A," which was recorded August 9, 1866. By this instrument the said

leased premises, together with a large amount of other
property, was granted and conveyed to Ellen J. Hyde
for her life, with remainder to certain children of the
parties therein expressly named.   There is also a pro-
vision in the conveyance that the said Ellen shall use
the rents and profits of the whole property conveyed
for the support and maintenance of herself, and also
for the maintenance and education of said children;
and the latter are therefore named in the findings and
evidence as " beneficiaries."   The court also found "that
Ellen J. Hyde and the beneficiaries in the instrument
set forth as ' Exhibit A' in the amended answer were
the only persons who, at any time since 1866, held any
legal or equitable title to the premises in said instru-
ment described, or any part thereof; and that George
Hyde at no time since 1866 was the owner of the whole
or any part thereof, or was entitled to make and exe-
cute said lease and the extension thereof."   The court
also found that at the time of the said assignment the
plaintiffs represented to said corporation that said
George Hyde was the owner of said premises, and that
plaintiffs were entitled under said lease to the possession
of said premises until January 1, 1896; and that by
reason of said representations said defendant was in-
duced to take said assignment in ignorance of the true
state of the title.   As to the findings above stated it is
sufficient to say that they are supported by the evidence.
The court held that the consideration for the promise
of the said defendant to pay said sums of money
monthly for said assignment had failed; and the ques-
tion to be determined is whether or not, under the cir-
cumstances above stated, the failure of the title of
plaintiffs to the leasehold attempted to be assigned
constitutes a valid defense to this action.   The question
must be answered in the affirmative.

   Counsel for appellants argued the case mostly upon
the theory that the relation of landlord and tenant
existed between plaintiffs and the corporation respond-
ent.   But there was no such relation.   The assignment

was of the whole term; there was no underletting—no interest left in the assignors; and the relation was simply that of seller and purchaser. (*Smiley* v. *Van Winkle*, 6 Cal. 605; Wood on Landlord and Tenant, sec. 65, p. 145.)

Neither do the rules which govern conveyances of real property apply to assignments of estates for years. A term for years is only personal property—a chattel real. "An estate for life, even if it be *per auter vie*, is a freehold; but an estate for a thousand years is only a chattel, and reckoned part of the personal estate." (2 Blackstone's Commentaries, 143, 385–87.) "All leases for years are held by law to be of less value—perhaps it would be more proper to say of less dignity—than estates for life; estates for life being freeholds, and for years but chattels, and regarded as part of the personal estate, and cast upon the executor." (1 Wood on Landlord and Tenant, 143; see, also, sec. 73, p. 149.) Under the common law leasehold estates of the wife went to the husband as personal property. (Wood on Landlord and Tenant, 223.) In the revised statutes of New York there was a provision that "no covenant shall be implied in any conveyance of real estate, whether such conveyance contain special provisions or not"; and the court of appeals of that state held that the language did not include a term for years because it is not real estate, and that in a grant of such term there is an implied covenant of quiet enjoyment not only against the grantor, but against others claiming by lawful title. (*Mayor etc.* v. *Mabie*, 13 N. Y. 151; 64 Am. Dec. 538.) The court there say: "Terms for years fall within the definition of personal property. They go to the executors like other chattels; and, although they are denominated chattels real to distinguish them from mere movables, they are not, when speaking with legal accuracy, considered real estate." The common law upon the subject has not been changed by our statutes. The provision of section 1113 of the Civil Code, that only certain enumerated covenants shall be implied in

transfers of property, is expressly limited to a convey-
ance by which "an estate of inheritance or fee simple is
to be passed"; and by section 765 the common-law dis-
tinction between freehold estates and estates for years is
followed, and it is declared that "estates for years are
chattels real." The same distinction is to be found in
section 14, and in sections 657 to 663 of the same code.
There is a marked difference between *things* real and an
interest or *estate* in things real. "The nature of the
thing itself, therefore, does not determine the character
of any particular estate that may exist in it, whether
personal or real, but the extent and duration of the
estate." (2 Cooley's Blackstone, 15, note 1.)

An assignment of a term for years is, therefore, gov-
erned generally by the rules applicable to the sale of
personal property; and, on such sale, while as to the
*quality* of the thing sold *caveat emptor* is the general rule,
the seller impliedly warrants the title. (Civ. Code,
1765; 2 Blackstone's Commentaries, 451; Benjamin on
Sales, 631; 1 Parsons on Contracts, 8th ed., 573, et seq.)
And the rule does not depend upon the knowledge, or
want of knowledge, of the vendor as to the real state of
the title, or upon deceit or fraud practiced by him.
Parsons correctly states the rule as follows: "In this
country it is now well settled by adjudications in many
of the states that the seller of a chattel, if in the posses-
sion, warrants by implication that it is his own, and is
answerable to the purchaser of it if taken from him by
one who has a better title than the seller, whether the
seller knew the defect of his title or not, and whether
he did or did not make a distinct affirmation of his title."
(Parsons on Contracts, 8th ed., 574.) In the case at
bar appellants were in possession, but our code does not
except a seller out of possession, and provides generally
that "one who sells, or agrees to sell, personal property
as his own thereby warrants that he has a good and un-
encumbered title thereto." (Civ. Code, sec. 1765.) In
*Souter* v. *Drake*, 5 Barn. & Adol., 992, the rule was ex-
pressly applied to the sale of a lease, and it was held

that in a contract for such sale there is "an implied undertaking to make out the lessor's title to demise, as well as that of the vendor to the lease itself, which implied undertaking is available at law as well as in equity." (To the same effect is *Farrer* v. *Nightingal*, 2 Esp. 639.)

The court below, therefore, correctly held that the consideration for respondent's promise to pay the monthly installments sued on as purchase money for the term of years had failed, and that, therefore, appellant had no cause of action. The total breach of a warranty of title—either express, as in case of a sale of real estate, or implied, as in case of a sale of chattels—makes a good cause of action for the purchaser to recover the purchase money if he had paid it, and a good defense against an action by the seller to recover such purchase money. (Benjamin on Sales, 908, 909, and cases cited.) In *Frisbee* v. *Hoffnagle*, 11 Johns. 50, which was an action to recover the purchase money for land conveyed to the purchaser with an express warranty of title, a nonsuit was sustained, the court saying: "The consideration for the note has, therefore, failed; for the defendant has no title, it having been extinguished by the sale under the judgment." That case is also pertinent to another point made in the case at bar, viz: That the respondent did not suffer an actual eviction, for the court there say: "Here is a total, not a partial, failure of consideration, for, although the defendant has not yet been evicted by the purchaser under the sheriff, he is liable to be so, and will be responsible for the *mesne profits*."

One who has received possession of property, either on a sale or any other kind of contract, from a person who has no title to it, may yield it to the true owner on his demand, without waiting for the latter to take it forcibly or by legal proceeding; although, if he do so, he takes upon himself the burden of proving that he to whom he thus yields possession had the paramount title. This principle is quite fully discussed by Mr.

Justice Thornton when delivering the opinion of the court in *Palmtag* v. *Doutrick*, 59 Cal. 154; 43 Am. Rep. 245. That case arose upon a bailment where the bailor had no right to the property bailed, and the bailee delivered it to the true owner, but, as to the principle there invoked, there is no difference between the relation of bailor and bailee and that of a seller and purchaser; the doctrine of *jus tertii* applies equally to both. There was also some fraud in that case; but the court quotes approvingly from an English case, in which it is said: "The position of the bailee is precisely the same whether his bailor was honestly mistaken as to the rights of the third person, or fraudulently acting in derogation of them. We think that the true ground on which a bailee may set up the *jus tertii* is that indicated in *Shelbury* v. *Scotsford*, Yelv. 23, viz: That *the estoppel ceases when the bailment on which it is founded is determined by what is equivalent to eviction by title paramount.*"

The above language which we have italicized shows the principle upon which, in cases like the one here at bar, a party in the possession of property is *not* estopped from denying the title thereto of the person from whom he received it, and may yield it to a demand of the true owner which he could not legally resist. Justice Thornton refers to *Hayden* v. *Davis*, 9 Cal. 573, where the doctrine was applied to the case of a common carrier delivering property to the true owner instead of the consignor, and quotes from *King* v. *Richards*, 6 Whart. 418, 37 Am. Dec. 420, where the court say: "If the bailee in such a case receives the goods from the bailor innocently under the impression made by the bailor that he is the owner thereof, or has the right to dispose of them in the manner he is doing, and therefore promises to return the goods to the bailor, it is very obvious that such a promise ought not to be regarded as binding because obtained through a false impression made willfully by the bailor; and *truth, which lies at the foundation of justice*, as well as all moral excellence, would seem to require in every such case that the goods should

be delivered to the true owner, especially if he demand the same, instead of the wrongful bailor." In that, as in some other cases, there was fraudulent misrepresentation; but, as we have seen, the rule is the same whether the person undertaking to dispose of the property "was honestly mistaken as to the rights of third persons, or fraudulently acting in derogation of them." Justice Thornton illustrates the principle by reference to the general relation of landlord and tenant—a relation certainly as favorable to appellants' contention in the case at bar as that of seller and purchaser—as follows: "As to eviction of tenant by title paramount, referred to in some of the cases above cited, . . . . the rule is thus stated by Wilde, J: 'If the lessee is disturbed in his occupation by a party having a title paramount to that of his lessor, so that he cannot legally continue his occupation under the lessor without rendering himself liable to the other party, he may yield the possession and take a new lease under him, or he may abandon the possession, and, in either case, he will thereafter not be liable to pay rent to the original lessor. Such an entry and disturbance are equivalent to an ouster.' (6 Rob. Pr. 364.")

In view of the principles above stated, the court below was right in holding that the consideration for the promise to pay the purchase money sought to be recovered in this action had failed, and that judgment should go for respondents. The judgment is not only legally correct, but is also in accordance with general principles of justice. The opposite view would compel respondent to pay not only the $3,150 demanded in this action, but $275 for each and every month down to January, 1896, for nothing. Appellants have lost nothing. They would have been forced to yield possession to the holders of the paramount title if they had never made the assignment to respondent.

We have been considering only the $275 per month to be paid by respondent as purchase money for the assignment. Of course appellants could not, under any

view, recover the $175 per month named in the lease; for there is no pretense that they have paid it. Neither can they ever be legally called upon to pay it, for the lessor is dead, and his legal representatives and succesors in interest have repudiated the lease.

Although the briefs of counsel are quite voluminous there are no other matters necessary to be discussed. It is proper to say, however, that we have considered appellant's points that the title of Mrs. Hyde has been extinguished by failure to perform conditions mentioned in the deed to her, and that George Hyde had authority to make the lease for eight years and six months and to extend it for another year; and that in our opinion, neither of said points is tenable.

The judgment and order appealed from are affirmed.

HENSHAW, J., and TEMPLE, J., concurred.

Hearing in Bank denied.