[Civ. No. 1614. Third Appellate District.—May 28, 1917.]

## A. W. FISSEL et al., Respondents, v. J. W. MONROE, Appellant.

FRAUDULENT CONVEYANCES — TRANSFER OF RIGHT TO PLANT CROP—CHANGE OF POSSESSION—CODE SECTION INAPPLICABLE.—Where the owner of a leasehold interest in a tract of land makes a transfer to his sons of the right to plant a crop of barley on the land, and the sons go into possession and continue in possession of the land

until after the crop is harvested, the transfer is not presumptively void as to creditors of the lessee under section 3440 of the Civil Code, which provides that every transfer of personal property is conclusively presumed to be fraudulent, as against the creditors of the transferrer, unless accompanied by an immediate delivery and followed by an actual and continued change of possession.

APPEAL from a judgment of the Superior Court of Yolo County. W. A. Anderson, Judge.

The facts are stated in the opinion of the court.

E. E. Gaddis, for Appellant.

Arthur C. Huston, and Harry L. Huston, for Respondents.

CHIPMAN, P. J.—The first paragraph of the verified complaint is as follows: "That on the twenty-fourth day of July, 1915, at and in the county of Yolo, state of California, plaintiffs were the owners and in the possession and, at the time of the filing of this complaint, are the owners of the following described goods and chattels, of the value of seven hundred dollars, to wit: 640 sacks of barley." It is then alleged that defendant wrongfully took said goods from the possession of plaintiffs; that demand was made of defendant for the possession thereof, which was refused, and that plaintiffs are damaged in the sum of seven hundred dollars.

Defendant answered: "1. That as to the allegations of paragraph 1 of said complaint, this defendant has no information or belief upon the subject sufficient to enable him to answer the same, and placing his denial upon that ground, denies generally and specifically each and all and every of the allegations therein contained." He denied that he "wrongfully took" said or any sacks of barley from the possession of plaintiffs, denied that plaintiffs made any demand for the possession thereof, and denied that defendant refused to deliver possession thereof; the allegation as to damage was also denied.

The court found "that all of the allegations of the complaint are true" and "that all of the allegations of the answer are untrue." Judgment was entered in favor of plaintiffs for seven hundred dollars, from which defendant prosecutes this appeal.

While it does not appear from the pleadings, reference is made in the record to the fact that defendant is sheriff of

Yolo County, and that his possession and subsequent sale of the barley were by virtue of a writ of attachment issued in an action in which D. A. Curtin was plaintiff and E. L. Fissel, the father of plaintiffs, was defendant.

It is stated in appellant's brief that the principal point urged on the appeal "is as to the insufficiency of the evidence to sustain the decision." The transfer of the barley in question from E. L. Fissel to the plaintiffs, as will be hereinafter specifically set forth, is claimed to have been presumptively fraudulent, because not accompanied by an immediate delivery and was not followed by an actual and continued change of possession, as required by section 3440 of the Civil Code.

Preliminarily, respondents raise the point that plaintiffs' ownership, as alleged in paragraph 1 of the complaint, must be held not to be denied. As to this they say: "If the defendant claimed to be the owner, he could not deny ownership in the plaintiffs for want of information"; citing *Bartlett Estate Co.* v. *Fraser,* 11 Cal. App. 373, [105 Pac. 130].

For four or five years prior to the transaction involved herein, which occurred in 1915, E. L. Fissel, his wife, and their two sons, respondents herein, were living on a tract of land called the Ludden place, which the father had leased from the owner. He was also, under a verbal lease from year to year, farming a piece of land known as the Elmore place, the two tracts being in close proximity to each other, the rental for the Elmore place being one-third of the crop raised. About March 2 or 3, 1915, the father, E. L. Fissel, was sick at his home on the Ludden place. The respondents and Sherman Hiddleson and J. T. Young, two employees of Mr. Fissel, Sr., were in the bedroom where the father was lying. As to the conversation occurring there, A. W. Fissel testified: "My father said he couldn't do any more, he was too sick, and for me to go ahead and put the crop in, I and my brother, and settle the bills that was against the crop, and if there was anything left, why, it was to be mine and my brother's. Q. Well, did he say what ranch? A. He said the Elmore ranch." C. R. Fissel testified: "My father just told us to go ahead and put in the crop and we could have it." J. T. Young's version of the conversation was that "Mr. Fissel . . . told the two sons if they took the Ludden—or the Elmore place and put the crop in it was theirs, for paying the bills against the crop, and the boys said they would take it." The

witness Hiddleson said: "I went in there to see him and they was talking about the crop, and he told the boys if they would take the Elmore ranch and put in the crop and pay the bills, they could have what they made."

Pursuant to the above detailed conversation, plaintiffs plowed the balance of the land, about half of it having been theretofore plowed by the elder Fissel; they sowed and cultivated the grain and harvested the crop.

The position taken by appellant is that the plowing by the father of 50 acres (the entire field being one hundred acres) was of the value of $1.50 per acre, or $75; that this constituted personal property, and was the leasehold interest of E. L. Fissel; and that the transfer of this leasehold interest was without consideration. (Citing *Jeffers* v. *Easton, Eldridge & Co.*, 113 Cal. 345, 352, [45 Pac. 680]; *Commercial Bank* v. *Pritchard*, 126 Cal. 606, [59 Pac. 130]; *Barnum* v. *Cochrane*, 143 Cal. 642, 645, [77 Pac. 656].) Respondents contend that there was no transfer of any leasehold interest, the transaction being nothing more than a mere cropping contract. (Citing *Walls* v. *Preston*, 25 Cal. 60, 64.)

The testimony relied upon by appellant as bringing the case within the purview of section 3440 of the Civil Code is stated by him substantially as follows: The barley seized by appellant was raised on the Elmore place in 1915. Albert W. Fissel, then twenty-five years of age, was unmarried, and had lived with his parents since attaining his majority, about six years. He owned one horse, a couple of mules (which were not work animals in 1915), some carpenter tools and farm implements, consisting of a four-gang plow. C. R. Fissel was twenty-three years of age and was also unmarried. He owned one mule, three years old, that had never been worked. He had no money in bank, nor had his brother, as far as he knew. The feed for the animals used in plowing the balance of the field, as well as the animals themselves and all implements used, were furnished by E. L. Fissel from the Ludden place, and the teams and men employed in the work were boarded by him. Appellants boarded with their parents; the mother did the cooking and the father purchased the groceries. Appellant states that the sacks in which the barley was placed were purchased by the father, but A. W. Fissel testified that he paid $40 and owed $35 for them, and that he had a settlement with the man from whom he bought the sacks.

At the time of the purported transfer the father was indebted in divers sums of money of no considerable amount.

Respondents' position is that the only thing transferred to them by their father was the right to plant a crop of barley; that the property in question was not in existence at the time of the transfer, and, therefore, the transfer does not fall within the provisions of said section 3440; that there could be no immediate delivery and no actual and continued change of possession of that which was not yet in being.

There was evidence that plaintiffs did the necessary plowing of the land with a tractor, for the hire of which they paid; they also hired the harvesting and threshing done and paid for it, both of them assisting in the work; they hauled the barley to the warehouse, setting apart the rentals and marking the sacks with the name of the owner of the land. With the exception of the fifty acres plowed by their father, which was replowed by plaintiffs, substantially all the cost of producing the crop was borne by plaintiffs. The seed used was in the granary taken from the Elmore place, and plaintiffs replaced it out of the crop raised by them.

Defendant made no claim of ownership in himself or any other person, and it is very doubtful whether, under the form of his answer, there was a sufficient denial of the averments of the verified complaint alleging ownership of the barley in plaintiffs. However, the facts constituting the basis of plaintiffs' claim of ownership were all brought out by plaintiffs, apparently disregarding their objection that the issue of ownership was not raised by the pleadings. Actual fraud was not alleged by defendant, and at the trial defendant's counsel expressly disclaimed that actual fraud in any way tainted the transaction. Neither did defendant in his answer deny the taking otherwise than by denying that he "unlawfully took" possession of the barley. Nor did he by his answer justify the taking as sheriff or otherwise. The fact that he did take possession, after the barley was harvested, under a writ of attachment at the suit of a creditor of plaintiffs' father and sold the barley under execution in that suit was brought out by plaintiffs in establishing their case, defendant objecting and contending that as he sued as an individual, evidence that he acted in his official capacity as sheriff was immaterial, irrelevant, and incompetent. In his cross-examination of plaintiffs' witnesses, who testified to what occurred between

the father and his sons when the transaction was entered into, defendant sought to show that it was colorable and void as to creditors, under section 3440 of the Civil Code, and in the course of the examination the relation of the parties and the circumstances, above referred to, surrounding the transaction were developed over plaintiffs' objection that neither actual nor presumptive fraud could be shown under the pleadings.

The court seems to have entertained some doubt as to the correctness of the theories respectively advanced by the parties and allowed all the evidence to go in, subject to a ruling to be made at the argument of the case. No ruling was made, and the record contains no intimation of the court's opinion other than as found in its omnibus finding "that all of the allegations of the complaint are true and all the allegations of the answer are untrue." In *Raymond* v. *Glover,* 122 Cal. 471, 476, [55 Pac. 398, 400], the trial court failed to pass upon the admissibility of certain evidence which was taken subject to a subsequent ruling as to such admissibility. It was pointed out that the supreme court "has repeatedly discouraged the practice of deferring rulings upon the admissibility of proffered evidence, but that to do so is not necessarily erroneous." The court, however, held that the failure to rule was error in that case, because the objecting party was deprived of an opportunity to rebut the evidence that had been received under objection. In the present case, all the evidence upon which defendant relied was admitted and was before the court, and if the finding of the court has support in the evidence, we cannot see that there was prejudicial error in the court's failure to announce its ruling on certain evidence.

Fissel, Senior, had the undoubted right to transfer to his sons, plaintiffs, the privilege of cropping the Elmore place subject to the terms of his lease, and unless he was at the time insolvent or contemplated insolvency, of which there is neither evidence nor claim made by defendant, he could do this voluntarily and without a valuable consideration. (Civ. Code, sec. 3442.) Defendant relies wholly upon the claim that the transfer was presumptively fraudulent under section 3440 of the Civil Code, which provides as follows: "Every transfer of personal property . . . is conclusively presumed if made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery,

and followed by an actual and continued change of possession of the things transferred, to be fraudulent, and therefore void, against those who are his creditors while he remains in possession,'' etc.    We are unable to see how this section of the Civil Code can be made applicable to the facts in this case. E. L. Fissel transferred nothing to plaintiffs but the right to crop the land, and so far as that part of the transaction is concerned, the plaintiffs went into immediate actual possession, and continued in actual and exclusive possession until after the barley was harvested and until it was taken into plaintiffs' possession.    The property now in question was not in existence when the transfer of the right to crop the land was made, and, of course, was not, and could not then be, in the possession of the transferrer.    For like reason there could be no actual and continued change of possession of this nonexistent property.    Plaintiffs took the land early in the season of 1915, prepared it for seeding by their own labor, seeded it, and afterward harvested the grain,—all at their own cost and expense.    The property involved had not even a potential existence, and constituted no part of anything transferred to plaintiffs.

It was held in *O'Brien* v. *Ballou,* 116 Cal. 318, [48 Pac. 130], where a growing crop of wheat was sold, that ''growing crops are chattels not susceptible of delivery until harvested, and are not 'in the possession or under the control of the vendor' within the meaning of the statute requiring an immediate delivery and continued change of possession.    (*Davis* v. *McFarlane,* 37 Cal. 634, [99 Am. Dec. 340].)    When the crop was harvested, it was the duty of plaintiff to take immediate possession of the grain and to retain such possession.'' This was done by plaintiff in that case, and the contract of sale was held ''not void under the statute of frauds.''

We attach no importance to such facts as that plaintiffs were allowed to live with their father while putting in and harvesting the crop; that they had but little money, and that they used some of the farm implements and work animals that were on the Ludden place.    The evidence was that plaintiffs' father had nothing to do with making the crop; that plaintiffs, through their own labor and resources and the credit they enjoyed in the neighborhood, had no difficulty in producing the crop and meeting their obligations without the aid of their father.    We think that the evidence was sufficient

to support the finding that plaintiffs are the owners of the property in question unaffected by the claims of any creditors of E. L. Fissel, plaintiffs' vendor.

The judgment is affirmed.

Hart, J., and Burnett, J., concurred.