In the Matter of LIQUIMATIC SYSTEMS, INC., a California corporation, Bankrupt.

No. 101084.

United States District Court
S. D. California,
Central Division.

May 31, 1961.

**626**

Lillick, Geary, McHose, Roethke & Myers, Los Angeles, Cal., for petitioners and claimants.

C. E. H. McDonnell, Los Angeles, Cal., for trustee.

BYRNE, District Judge.

Prior to March 1956, Earl Spangler, as a sole proprietor, was engaged in the business of manufacturing devices for metering and storing liquid food products. These devices were designed by Spangler and were based upon, and incorporated, patents which he owned.

In March 1956, Spangler entered into a partnership agreement with Heber C. Erickson and Harry E. Erickson, the claimants and petitioners herein. Under this agreement, Spangler kept 55% of the business, putting all of the business' assets and the patents into the partnership. The Ericksons became limited partners, acquiring 45% of the business, contributing $10,000 each, and agreeing to guarantee bank loans. The resulting partnership, composed of Spangler and the Ericksons, was known as Liquimatics Systems.

The partnership carried on business for the remainder of 1956, expanding the business but losing all of its invested capital. For the calendar year 1957 the partnership grossed $352,856.79 and netted $3,421.90.

In June 1957, Spangler and one David Difley proposed to the Ericksons that the business be expanded and incorporated. The Ericksons were not interested in this proposal and Spangler and Difley offered to buy their partnership interest for $25,000. Consequently, on August 6, 1957, the Ericksons gave Spangler an option, exercisable within six months, to buy their 45% interest in the partnership for $25,000.

After having located several interested investors, Spangler and Difley on August 13, 1957, formed Liquimatics Systems, Inc., the bankrupt corporation herein. The sole purpose of this corporation was ostensibly to buy, finance and operate the business owned by the partnership, Liquimatics Systems.

By letter dated January 29, 1958, Spangler advised the Ericksons that he intended to exercise the option of August 6, 1957, and buy their 45% interest in the partnership. Accordingly, on February 20, 1958, Spangler, as president of the corporation, entered into an agreement with the Ericksons whereby they transferred to the corporation their 45% interest in the partnership, and each received from the corporation a total of $12,500 ($6,250 cash and a note in the same amount).

Liquimatics Systems, Inc., carried on business until July 31, 1959, when it filed its petition for leave to file proceedings under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq. On November 24, 1959, the debtor corporation being unable to file or present to its creditors a plan of arrangement, an order of adjudication was entered.

On May 18, 1960, Harry E. Erickson and Heber C. Erickson each filed in the bankruptcy proceedings his unsecured claim for $6,250 plus interest thereon at 6% per annum from May 21, 1959, which claims are founded upon the promissory notes of the bankrupt corporation dated February 21, 1958.

On July 27, 1960, A. J. Bumb, the trustee in bankruptcy, filed his objections to each of these claims and prayed for an affirmative judgment that Heber and Harry Erickson each pay to the bankruptcy estate the sum of $6,250 which had previously been paid to each of them by the bankrupt corporation. The trustee's objections to the claims of the Ericksons, and his request for affirmative judgment against them, were based upon the contention that in the transaction of February 20, 1958, the Ericksons had sold to the bankrupt corporation a worthless business for a total of $25,000, half of which was paid in cash and half by the notes.

The Referee sustained the trustee's objections to the claims of the Ericksons and granted the affirmative judgment prayed for by the trustee. On February 8, 1961, the Ericksons filed their petition for review by this court of the referee's order.

Neither Section 60 ("Preferred creditors") nor Section 67 ("Liens and fraudulent transfers") of the Bankruptcy Act (11 U.S.C.A. §§ 96 and 107) is applicable in this case because these sections apply only to transactions made within four months of bankruptcy, and the transaction here set aside by the referee took place in February 1958, some seventeen months before the commencement of the bankruptcy proceedings in July 1959. Therefore, the referee apparently based his decision upon Section 70, sub. e of the Bankrupcty Act (11 U.S.C.A. § 110, sub. e).[1]

■ The validity of the bankrupt's transfer of property made more than four months before bankruptcy, and attacked under 11 U.S.C.A. § 110, sub. e, must be determined by state law; if a creditor of the bankrupt could have avoided the transfer under state law, the trustee may do the same. Stellwagen v. Clum, 1918, 245 U.S. 605, 38 S.Ct. 215, 62 L.Ed. 507; Irving Trust Co. v. Kaminsky, D.C.S.D.N.Y.1937, 19 F.Supp. 816.

Thus, it is necessary to turn to California law in order to determine whether the transfer of money and notes by the bankrupt corporation to petitioners on February 20, 1958, could be set aside by the bankrupt's creditors, and hence by the trustee.

■ Under the Uniform Fraudulent Conveyance Act, §§ 3439.01 to 3439.12, inclusive, of the California Civil Code, a creditor may set aside a conveyance by his debtor which is fraudulent as to the creditor.

There are two sections of the Act which define conveyances fraudulent as to the creditor:

"§ 3439.04. Conveyances, etc., deemed fraudulent: Transaction rendering debtor insolvent. Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation incurred without a fair consideration."

"§ 3439.07. Transaction entered into with intent to hinder or defraud creditors. Every conveyance made and every obligation incurred with actual intent, as distinguished from

---

1. "§ 110. Title to property

\*     \*     \*     \*     \*

"(e)(1) A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this title which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this title, shall be null and void as against the trustee of such debtor.

"(2) All property of the debtor affected by any such transfer shall be and remain a part of his assets and estate, discharged and released from such transfer and shall pass to, and every such transfer or obligation shall be avoided by, the trustee for the benefit of the estate: \*  \*  \* The trustee shall reclaim and recover such property or collect its value from and avoid such transfer or obligation against whoever may hold or have received it, except a person as to whom the transfer or obligation specified in paragraph (1) of this subdivision is valid under applicable Federal or State laws."

intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

It may be noted parenthetically that the term "conveyance" as used in the Act includes the payment of money. California Civil Code § 3439.01.

It must now be determined whether either of these sections would enable a creditor of the bankrupt corporation herein to set aside the corporation's transfer of money and notes to petitioners on February 20, 1958.

■ Under § 3439.04, the actual intent of the transferor is immaterial: the conveyance is conclusively presumed fraudulent as to his creditors if the conveyance is made without fair consideration while the transferor is insolvent, or if he will by the conveyance be rendered insolvent. In re Boggs' Estate, 1942, 19 Cal.2d 324, 121 P.2d 678; Allee v. Shay, 1928, 92 Cal.App. 749, 268 P. 962; Benson v. Harriman, 1921, 55 Cal.App. 483, 204 P. 255.

■ Insolvency must exist at the time of the transfer or must result therefrom, to render the transfer fraudulent as to creditors. Miller v. Keegan, 1949, 92 Cal.App.2d 846, 207 P.2d 1073. As a general rule, solvency and not insolvency is to be presumed, Id., and subsequent insolvency is not in itself sufficient foundation for an inference of insolvency at the time of the conveyance. Tainter v. Broderick Land & Investment Co., 1918, 177 Cal. 664, 171 P. 679. In the instant case the referee made no finding, and there is nothing in the record to indicate, that the bankrupt corporation was insolvent when it conveyed the notes and cash to petitioners, or was rendered insolvent by the conveyance. Therefore, § 3439.04 does not render fraudulent the corporation's conveyance of cash and notes even if the consideration received by the corporation was inadequate, because a conveyance without consideration is not fraudulent as to creditors if made at a time when the transferor was solvent. Tokar v. Redman, 1956, 138 Cal.

App.2d 350, 291 P.2d 987; Fissel v. Monroe, 1917, 33 Cal.App. 756, 166 P. ·607; White v. Besse, 1904, 145 Cal. 223, 78 P. 649; Morgan v. Hecker, 1888, 74 Cal. 540, 16 P. 317.

■ Under § 3439.07 a transfer made with actual intent to defraud creditors is fraudulent as to any creditor, regardless of whether the debtor-transferor was insolvent at the time of the transfer. Freeman v. La Morte, 1957, 148 Cal.App. 2d 670, 307 P.2d 734; Security-First Nat. Bank of Los Angeles v. Bruder, 1941, 44 Cal.App.2d 767, 113 P.2d 3; Adams v. Bell, 1936, 5 Cal.2d 697, 56 P.2d 208; Alpha Hardware & Supply Co. v. Ruby Mines Co., 1929, 97 Cal.App. 508, 275 P. 984.

In order to enable the corporation's creditors, and hence the trustee, to set aside the conveyance under § 3439.07, it must appear that the transferor corporation made the conveyance with actual intent to hinder, delay or defraud present or future creditors. The question of actual intent is of controlling importance under this section. Millard v. Epsteen, 1943, 58 Cal.App.2d 612, 137 P.2d 717.

■ An actual intent to defraud creditors is not usually found as a matter of law from the existence of any given set of facts, but must be proved just as any other material fact. The court must infer or find the existence of a fraudulent intent from the evidence, and may not declare the transaction void as a matter of law because of the appearance of what are frequently called "badges of fraud". However, because of the nature of an action to set aside a conveyance, direct proof of the fraudulent intent of the parties is often impossible. For this reason, and because the intent of the parties and the facts of the transaction are peculiarly within the knowledge of those sought to be charged with fraud, proof must come by inference from the circumstances surrounding the transaction and the relationship and interests of the parties. Indicia of fraud that might be insufficient when considered separately may, by their number and association when considered

together, suffice as strong evidence of fraudulent intent. See 23 Cal.Jur.2d, Fraudulent Conveyances § 40, pages 489–490, and cases cited therein.

The referee detected what he considered "badges of fraud" in the activities of Spangler and thought that the Ericksons "realized that they had made a very poor deal" and wanted to "get out".[2] No doubt petitioners escaped from an unprofitable venture by selling their partnership interest to the corporation for $25,000. However, when all of the circumstances surrounding the conveyance are considered, it is difficult, if not impossible, to find any actual intent on the part of the corporation to defraud its creditors by paying the Ericksons $25,000 for their 45% interest in the partnership. It is not alleged or shown by the record that the corporation had any creditors at the time of the conveyance and the principal immediate "future creditor" indicated at the time was the Bank of America National Trust and Savings Association. The Bank apparently did not think there was any intent to defraud. Indeed it released the Ericksons as guarantors of a $45,000 loan and accepted the corporation in lieu thereof.[3] With the facilities for investigation which were available to the Bank it apparently determined that the corporation was a good credit risk.

■ The referee made no finding as to fraud on anyone's part, but concluded as a matter of law that petitioners' sale of their partnership interest was fraudulent. This conclusion cannot stand, inasmuch as the record is entirely devoid of evidence from which the transferor's actual intent to defraud its creditors can be inferred.

The referee made a finding that the Board of Directors of the corporation had never authorized the purchase of the Ericksons' interest in the partnership and concluded that the transaction was therefore void.

California Corporations Code § 3901 (b) provides that a corporation shall not sell, lease, convey, exchange, transfer, or otherwise dispose of all or substantially all of its property and assets except under authority of a resolution of its board of directors and with the approval of the principal terms of the transaction and the nature and amount of the consideration by vote or written consent of shareholders entitled to exercise a majority of the voting power of the corporation. It has been held that this section was enacted for the benefit of the stockholders and creditors of the selling corporation, and that they alone can object to the mode of transfer. Solorza v. Park Walter Co., 1948, 86 Cal.App.2d 653, 195 P. 2d 523; Gunther v. Thompson, 1931, 211 Cal. 631, 296 P. 611.

■ There is nothing in the record to indicate that $25,000 constituted all, or substantially all, of the corporation's assets at the time of the conveyance. Hence, a creditor of the corporation could not attack its conveyance of $25,000 to petitioners on the ground that such conveyance was not authorized by the board of directors. It follows that the trustee

2. (Pages 2–5 Transcript of proceedings of December 22, 1960) "The Referee: Well, one point in this case, counsel, that strikes me is that it was just basically a fraudulent transaction right from the beginning. I am going to let my hair down and be frank. I think that everything Mr. Spangler had had his finger in as far as this case is concerned smells of fraud * * *. The only one who has ever profited in any way in any of these transactions is Mr. Spangler, and he has rather consistently profited, to the extent of $1500.00 a month that he has drawn out. * * * There are certain badges of fraud that I see in this case, and while Mr. Spangler is the chief actor as far as all of this fraud goes, the Ericksons had certain knowledge of the situation which is determinative of their rights * * * I think * * * they realized that they had made a very poor deal * * * and they * * * wanted to get out."

3. (Page 5 Transcript of proceedings of December 22, 1960) "The Referee: But they were liable at that time for $45,000.00, and the bank wouldn't release them until the bank had satisfied itself the corporation was taking over these obligations * * *"

likewise cannot set aside the conveyance on this ground because 11 U.S.C.A. § 110, sub. e gives the trustee no greater rights than the bankrupt's creditor possesses; if the creditor cannot succeed in setting aside the conveyance under the applicable state law, neither can the trustee succeed.

The referee's order of February 2, 1961, sustaining the trustee's objections to petitioners' claims, disallowing the claims and directing each petitioner to pay the trustee the sum of $6,624.98, is reversed. Counsel for petitioners is directed to prepare, serve and lodge a formal order pursuant to local Rule 7, West's Ann.Cal.Code.