[Civ. No. 613.   Third Appellate District.—October 27, 1909.]

## REUBEN HOOVER, Appellant, v. JOSEPH WASSON et al., Defendants; JOHN L. WASSON, Respondent.

CONVEYANCE OF LAND—ALLEGED FRAUD—DEED PRIOR TO BREACH OF CON-
TRACT TO PURCHASE OTHER LAND—EXECUTION SALE FOR INSTALL-
MENT—GOOD FAITH—SUPPORT OF FINDING.—Where one who con-
tracted to purchase land had paid part of the purchase money, and
the title was reserved until all installments were paid, and had prior
to any breach of the contract conveyed other land owned by himself,
in consideration of the surrender to him of an unpaid outlawed
note executed by himself to his grantee, which land so conveyed was
for alleged fraud subsequently sold under execution for an unpaid
installment, it is held, upon a review of the evidence, that a finding
that such conveyance was made for a valuable consideration, in good
faith and without any intent to defraud the original vendor of his
purchase money, was sufficiently supported.

ID.—FACT OF CONVEYANCE FOR SURRENDER OF OUTLAWED NOTE—PRO-
BATIVE EFFECT—QUESTION OF FACT FOR COURT.—The probative
effect of the fact that the conveyance was in consideration of the
surrender of the outlawed note was a question of fact for the court
to consider and weigh in determining the ultimate fact as to good
faith. Such fact is not of itself evidence of fraud, and at most
it can only be considered as a circumstance which might or might
not tend to prove fraud, according to its effect as influenced by
other proved circumstances.

ID.—EFFECT OF BAR OF STATUTE UPON CONSIDERATION.—The fact that a
debt may be barred by the statute of limitations can affect the
remedy only, but can in no degree release the debtor of the moral
duty of paying it, and it will therefore support a contract as con-
sideration, and although the note surrendered in consideration of
the conveyance was barred by the statute, it constituted a good and
valuable consideration.

ID.—DELIVERY OF DEED—CONCLUSIVE EVIDENCE—OMISSION TO FIND NOT
GROUND FOR NEW TRIAL.—Where the evidence as to the delivery of
the deed to the grantee is conclusive, so that any finding made
thereon must have been adverse to the party seeking a new trial,
the omission to find thereon is not ground for a new trial.

ID.—APPELLANT NOT IN POSITION TO CLAIM INJUSTICE IN PROTECTION
OF RESPONDENT.—Where appellant as vendor had been paid by the
purchaser under his contract of purchase over $1,600, and had re-
covered back the land after the purchaser had expended three years'
time, much labor and considerable money in its improvement, thus
putting the land in a condition in which it became a profitable pro-

ducer of oranges, appellant has no ground in equity to complain of injustice in the protection of the respondent as the purchaser's vendee of other land, as not having been made in fraud of appellant's rights.

APPEAL from a judgment of the Superior Court of Mariposa County, and from an order denying a new trial. J. J. Trabucco, Judge.

The facts are stated in the opinion of the court.

John A. Wall, for Appellant.

J. W. P. Laird, and Rowen Irwin, for Respondent.

HART, J.—This is a suit to quiet title to certain timber land situate in Mariposa county to which plaintiff claims title under and by virtue of a sheriff's deed, said land having been sold by that officer to plaintiff at a pretended sale under an execution issued upon a judgment for the sum of $1,676.88, rendered and entered by the superior court of Tulare county in favor of said plaintiff and against the defendant, Joseph Wasson.

The defendant, John L. Wasson, answered the complaint herein, specifically denying the material averments thereof, and particularly that Joseph L. Wasson was, at the time of the levy of said execution and the sale thereunder, the owner of the land as to which title is sought to be quieted, and alleging title to, and ownership of, said land in himself.

Joseph Wasson made no reply to the complaint and, as to him, judgment by default was entered.

The court below awarded judgment to John L. Wasson that he is the owner of the land described in the complaint and that the plaintiff "has no right, title or interest in or to said land," etc.

The appeal here is by the plaintiff from the judgment and the order denying his motion for a new trial.

The appellant contends that the evidence does not support certain findings of fact, and upon this contention insists that the judgment and order should be reversed.

It appears from the evidence that, on the fifteenth day of January, 1902, a written agreement was executed by the plaintiff and the defendant, Joseph Wasson, whereby the first-

named agreed to sell and said Wasson agreed to purchase, for
the sum of $8,000, a certain tract of land situated in the
county of Tulare. The agreement stipulated that Wasson was
to pay the principal sum in installments as follows: Fifteen
hundred dollars on the day on which the agreement was ex-
ecuted; $500 on or before the first day of January, 1905, and
$1,000 on each succeeding first day of January until the prin-
cipal, together with interest on the deferred payments, at the
rate of seven per cent per annum, was fully paid. The title
to the land was to remain in plaintiff until the principal and
all interest accruing thereon was paid.

The land described in the agreement was devoted by Was-
son to orange growing, to which, it is admitted, it is peculiarly
adapted.

Joseph Wasson was, at the time of the making of said con-
tract, the owner of the land involved in this litigation. On
the thirtieth day of April, 1904, Joseph Wasson conveyed, by
deed, said land to his brother, the respondent herein, and said
deed was recorded in the office of the county recorder of Mari-
posa county on the second day of May, 1904. The plaintiff,
in the year 1905, instituted an action against the defendant,
Joseph Wasson, for the purpose of recovering the sum of $500,
the first installment of principal due on the contract between
himself and said Joseph for the sale and purchase of the
orange land, together with unpaid interest. In this action,
plaintiff obtained a judgment, on the twelfth day of June,
1905, for the sum of $1,676.88. As before stated, execution
was issued on said judgment and the same sought to be levied
on the land in dispute here, which, as seen, had been conveyed
in the year 1904 by Joseph Wasson to his brother, the re-
spondent. The land was, as seen, sold under said execution
and purchased at said sale by the plaintiff himself.

The good faith of the transaction between the Wassons by
which the respondent became the owner of the land in con-
troversy is challenged by the complaint. It is therein alleged
that the conveyance of the land by Joseph to his brother, the
respondent, resulted from a transaction conceived in fraud
and was executed by said Joseph "with a view to conceal his
said property from plaintiff and to hinder, delay and defraud
plaintiff in his collection of his said demand now included
in the judgment heretofore described." But we observe no

reason for doubting that the evidence sufficiently supports the
finding of the trial court against that claim.

In the first place, it may be noted, the conveyance of the
land concerned here was executed in the year 1904, approxi-
mately a year before there was anything due the plaintiff from
Joseph Wasson under the terms of their contract.

It appears that, at the time of the execution of said deed
by Joseph, the note which was the consideration moving
Joseph to so convey said property was "outlawed," or, in other
words, action thereon was barred by the statute of limita-
tions. It further appears that in the year 1904 Joseph Was-
son sold the orange crop gathered from the land which con-
stituted the subject of the contract between himself and plain-
tiff for the sum of $1,000. In the month of December of that
year plaintiff went to the "orange ranch" and made a de-
mand on Joseph for the money then due under their contract.
After some discussion of the matter, in the course of which
Wasson declared that he desired to make some improvements
on the land, the plaintiff was accompanied by Wasson to the
Porterville Bank, where plaintiff was paid by Wasson on
account of their contract the sum of $150. The bulk of the
money remaining of the $1,000 received for the orange crop
was used by Joseph, with the consent of plaintiff, in con-
structing flumes on and otherwise improving the land for
orange growing purposes. The plaintiff testified: "A short
time after the improvements were completed, I then sued him
[Joseph] for the moneys that became due on the first day of
January, 1905. I afterward received possession of all the
orange land with the improvements thereon and have since
sold the same."

Plaintiff admitted that the first time he ever talked with
the respondent, John L. Wasson, about the land in contro-
versy was during the harvest time of the year 1905—more
than a year after the deed had been made by Joseph Wasson
to John L. Wasson, conveying to the last named said land.

The respondent explained the transaction by which his
brother conveyed to him the land in controversy as follows:
"When he let go of the ranch down there, which I sold him,
the man who bought the place assumed the mortgage on the
ranch and gave this timber land in payment. After I came
back from Los Angeles a few years later, Joe told me that

when he sold the timber land he would pay me the balance due. We talked over either buying the ranch and his selling to get my money out of it, at different times. In the fall of 1903 I was talking about buying the timber land from him, and so Joe and I and my boy drove from where we lived in Delano up into Mariposa county, distance of two hundred miles or so, to look at the timber land. After we looked the timber land over, I at that time told him I would take the timber land for what he owed me, and he said that he would deed it to me when he got back. It was agreed between us then that he was to go before some attorney or notary when he got back and make out a deed to me. That was in the fall of 1903 and ran along then until April 30, 1904, when Joe had this deed made out and had the same sent over and recorded, as he had agreed with me to do. . . . I did not tell him [plaintiff] to go to my brother Joe and tell Joe that I said for him to sign the deed and that I would sign it afterward. . . . Joe did not have anything left after he gave me the deed to the timber land, excepting the orange contract on the land of Mr. Hoover. I was perfectly willing to give the timber land to Hoover on condition that the debt owing him by my brother Joe be reduced and I have an interest in the orange grove. I did not have any contract or understanding with my brother Joe wherein or whereby I was to hold the land in trust. There was no arrangement, secret or otherwise, by which Joe was to have any interest in this timber land, either directly or indirectly, after he deeded the same to me. . . . I bought that timber land for myself, and when he gave me the deed, I gave him back his note and canceled his indebtedness to me for the deed, and I did not know at that time anything about the business relation between Joe and Mr. Hoover except in a general way. I did know that Joe bought this orange land from Mr. Hoover, and naturally was trying to improve the same, but as to how much he owed Hoover or when the payment was due, or how much Joe was behind, if any, I did not know.''

Joseph Wasson corroborated his brother as to the good faith of the transaction resulting in the conveyance of the timber land by him to the respondent.

We think that it must be clearly manifest, from the brief résumé of the evidence which we have here presented, that the

11 Cal. App.—38

assailed findings are sustained by the proofs. These findings are, briefly, that defendant, Joseph Wasson, was not the owner of the land in dispute subsequently to April 30, 1904; that the deed from Joseph to John L. Wasson, dated April 30, 1904, was for a valuable consideration and not made either on the part of Joseph Wasson or the grantee "to delay or defraud plaintiff in the collection of his demand included in the judgment secured by appellant against Joseph Wasson"; that said conveyance was not voluntary, sham or fictitious, but was for a valuable consideration, and that the respondent "has not held and does not now hold said lands in secret trust but holds said lands by virtue of said conveyance in his own right and as the owner in fact"; that appellant did not become the owner of the lands by his sheriff's deed, and has no interest in or to the same and that said conveyance "from Joseph to John L. Wasson was and is not fraudulent and void, and does not operate as a cloud on the title of appellant."

Counsel for the appellant undertakes to make much of the fact that plaintiff's testimony, wherein he stated that Joseph Wasson said to him, referring to the land concerned here, that he (Joseph) "only made him [respondent] a deed to put it out of my name—I own it all the same—I thought it would be a good thing to fall back on when I get through with the orange grove"—stands in the record without contradiction. While it is true that the record does not disclose a specific denial on the part of Joseph Wasson that he made the statement to which plaintiff testified, the record nevertheless shows that Joseph testified: "At the time I made the deed to my brother I had no thought or idea of cheating or defrauding Hoover or anybody else. There was no understanding or agreement between me and my brother by which I was to have any interest in this timber land after I sold it to my brother. There was no understanding at that time or is there now any understanding between us, secret or otherwise, whereby I am to receive one cent out of this timber land, nor anyone else to receive any benefit out of the same for me or on my behalf." Thus it will be seen that, whether Joseph made the statement attributed to him by plaintiff or not, he testified to facts from which alone the trial court would have been justified in finding that the transaction involving the conveyance of the land to respondent was honest and executed in the best of faith, and with no design to fraudulently interfere

with any of plaintiff's rights. But, as before stated, the testimony of John L. Wasson bearing upon the question of the good faith and honesty of the transaction coincides in all important particulars with the testimony of Joseph, and there is, therefore, ample support of the challenged findings.

Considerable stress is laid upon the fact by appellant that the right to maintain an action on the promissory note which was surrendered and the indebtedness evidenced thereby canceled by respondent as the consideration for the conveyance of the timber land was barred by the statute at the time of such transfer. But that fact, as were all the other facts and circumstances in the case, was for the court, as the trier of the questions of fact, to consider and weigh in the determination of the ultimate fact. Whether such a circumstance is important as tending to show fraud or lack of good faith in a transaction must depend largely on other circumstances characterizing such transaction. It is not the contention, nor could it be, that the fact that the note was "outlawed" when the transfer of the timber land was made by Joseph to his brother constituted, in itself, evidence of fraud. At best it could only be a circumstance which might or might not tend to prove fraud, according to its effect as influenced by other proven facts and circumstances. The fact that a debt may be barred by the statute of limitations can affect the remedy only, but in no degree can it release the debtor of the moral duty of paying it, and it will, therefore, support a contract as consideration. "Although the note was barred by the statute of limitations, it constituted a good and valuable consideration." (*Chabot* v. *Tucker,* 39 Cal. 434; *Mull* v. *Van Trees,* 50 Cal. 547; *Sullivan* v. *Sullivan,* 99 Cal. 188, [33 Pac. 862] ; *Womack* v. *Womack,* 8 Tex. 397, [58 Am. Dec. 123].)

In *Hart* v. *Church,* 126 Cal. 480, [77 Am. St. Rep. 195, 58 Pac. 913], it is said: "It is well settled in this state that the extinguishment or security of a pre-existing debt constitutes a valuable consideration for the sale or assignment of property"; citing *Frey* v. *Clifford,* 44 Cal. 335.

But counsel for appellant himself concedes it to be the rule "that the extinguishment of an honest indebtedness is a good consideration for a transfer, even though the debt [the action] is barred by the statute of limitations," and it is therefore unnecessary to follow this discussion further.

It is pointed out by the appellant that there is no specific finding of a delivery of the deed from Joseph to the respondent. Both Joseph and John L. Wasson testified that the deed was delivered to the latter about two weeks after the execution of the instrument, and there was no contradiction of or attempt to contradict the testimony thus given upon this point. In *Gates* v. *McLean*, 70 Cal. 46, [11 Pac. 491], it is said: "It has been repeatedly held that even when the court has omitted to find upon a material issue, a new trial may be denied if on the evidence the finding must have been adverse to the party asking the new trial." The evidence here would justify no other finding upon the question of delivery than one adverse to plaintiff.

As there is no other point presented here but the question whether the evidence sustains the findings of the court, we can perceive no reason for giving extended attention to the discussion in respondent's brief of the alleged bad faith of appellant with regard to the contract between himself and Joseph Wasson. We may, however, express the conviction, founded upon the evidence as disclosed before us, that the plaintiff, having been paid by Joseph Wasson the sum of over $1,600 under their contract, and having recovered back the land which he had agreed to sell Joseph for $8,000, after Joseph had expended three years' time, much labor and considerable money in its improvement, thus putting it in a condition in which it became a profitable producer of oranges, has no ground, in equity, on which to base the complaint that injustice to him will follow the judgment against him in this action.

The judgment and the order appealed from are, for the reasons herein set forth, affirmed.

Burnett, J., and Chipman, P. J., concurred.