The judgments and orders appealed from are affirmed.

Desmond, P. J., and Shinn, J., concurred.

Appellant Jollet's petition for a hearing by the Supreme Court was denied September 15, 1943. Traynor, J., voted for a hearing.

[Civ. No. 6883. Third Dist. Aug. 20, 1943.]

W. J. KIRKPATRICK, Appellant, v. MARTHA C. TOWERS et al., Respondents.

252

Van Dyke & Harris for Appellant.

K. D. Robinson and Fontaine Johnson for Respondent.

ADAMS, P. J.—This is an appeal from a judgment in favor of defendants in an action brought by appellant to set aside transfers alleged to have been made in fraud of creditors.

Prior to December, 1937, defendants Martha C. Towers, W. R. Towers and Maysie K. Towers, his wife, were indebted to Bank of America National Trust & Savings Association on a promissory note, which said note was secured by a deed of trust upon certain real property hereinafter referred to as the Newcastle Ranch property. Sale of this property on foreclosure of the deed of trust resulted in a deficiency of $5,924.16, for the collection of which appellant Kirkpatrick, as assignee of the bank, began suit May 3, 1938, and recovered judgment November 17, 1938.

Said judgment being wholly unsatisfied on January 30, 1939, appellant began this action seeking to set aside certain transfers of property made by Maysie K. Towers and her hus-

band, W. R. Towers, which were alleged to have been made without consideration, and with intent to hinder, delay and defraud the creditors of said transferors, including plaintiff, and to have been accepted by the transferees with knowledge of said fraudulent intent and with the intent to assist the transferors. It was further alleged that at the time of said transfer said tranferors were insolvent.

The transfers complained of were (1) the transfer on January 28, 1938, of what is referred to as the San Francisco property which belonged to Maysie K. Towers (she having, on December 17, 1937, acquired same by inheritance from her mother), which she and her husband conveyed to defendants Ralph E. Corbett and Margie L. Corbett, who, in turn, executed a trust deed conveying said property to trustees for the benefit of Maysie K. Towers as beneficiary, securing thereby the payment of their promissory note in the sum of $2,300 to said beneficiary, which note and deed of trust Maysie K. Towers assigned to her minor daughter; (2) the transfer, also on January 28, 1938, to said minor daughter, of what is called the Sacramento property (which also belonged to Maysie K. Towers, and had been acquired by her inheritance); (3) the transfer to said daughter on February 5, 1938, by Maysie K. Towers and her said husband, of what is referred to as the Newcastle town property.

The foregoing transfers were admitted by defendants' answers, and it was admitted that the first two were without consideration; but consideration for the transfer of the Newcastle town property was alleged to have been the sum of $450 which the parents owed the child, they having used that sum of her money for the improvement of said property some years before.

The action was tried in January, 1940, before the court sitting without a jury, and resulted in a judgment that plaintiff take nothing. The court found that the transfers above mentioned were made by W. R. Towers and his wife, but it further found that they were not fraudulent and void as to plaintiff; that it was not true that they were made without consideration and with intent to hinder, delay and defraud creditors of the transferors; that it was not true that at the time of making said transfers they were insolvent; and that it was not true that said W. R. Towers and Maysie K. Towers had no other land or property in this state out of which plaintiff could realize his claim evidenced by his judgment.

Appellant's contention here is that the findings of the court are not sustained by the evidence; that, to the contrary, the evidence shows that said transfers were made with intent to defraud creditors and that they rendered defendants insolvent. Respondents counter by pointing out that the evidence shows that at the time said transfers were made Towers and his wife owned property worth in excess of $25,000, to wit, the Newcastle Ranch property, worth $12,500, exclusive of the mineral rights thereon; $2,300 due from the Corbetts on their note; cash in bank, $1,261.32; the Newcastle town property worth $1,000; the Sacramento property worth $5,000; a bond worth $1,000, and the property referred to as the Auburn property, worth $2,500, both of which were a part of Mrs. Towers' inheritance; that their total indebtedness at the time of said transfers was approximately $11,156, made up of $8,300, taxes and interest owing the bank (secured by the Newcastle Ranch), $450 due on an automobile, $1,250 owing one Ludwig (secured by mortgage on the Auburn property), household bills $150, a note of $371 which was an obligation of the estate of Mrs. Towers' mother, and an obligation of $600 to their attorney; and that after the conveyances to their daughter they still had a clear net worth in excess of the indebtedness to the bank, as the automobile balance, the household bills and the note for $371 had then been paid, and the indebtedness to their attorney secured by a chattel mortgage on the automobile; and that in any event, as the value of the Newcastle Ranch was in excess of the amount of indebtedness to the bank, they had property of sufficient value to satisfy claims and were free to make transfers (*Birkhauser* v. *Ross,* 102 Cal.App. 582 [283 P. 866]). They assert that lack of consideration alone is insufficient to constitute fraud (sec. 3442, Civ. Code); and that as no actual intent to defraud was shown, the transfers could not be set aside (*Burton* v. *Mullenary,* 147 Cal. 259 [81 P. 544]).

We are of the opinion that these claims of respondents must be sustained. ■ On appeal it is the duty of this court to uphold the findings of the trial court unless it can be said that there is no evidence to sustain them. (*Reay* v. *Butler,* 95 Cal. 206 [30 P. 208] ; *Badin* v. *Gaugh,* 5 Cal.App.2d 185, 186 [42 P.2d 394] ; *Herrlein* v. *Tocchini,* 128 Cal.App. 612, 619-620 [18 P.2d 73].) No actual fraud on the part of defendants was shown, and if any inferences were deducible from the evidence as to their intent to defraud, such infer-

ences were for the trial court (*Lufkin* v. *Patten-Blinn Lumber Co.*, 15 Cal.App.2d 259, 261 [59 P.2d 414]) and have been drawn in favor of defendants.

As to appellant's contention that the transfers were made in contemplation of insolvency and were therefore void, the case of *Norton* v. *Blenkiron*, 138 Cal.App. 66 [31 P.2d 807], appears to be directly in point. There it was sought to set aside conveyances made by defendant Wolter to his sister. Wolter owed plaintiff on a promissory note for $26,500 secured by a mortgage, which mortgage plaintiff brought action to foreclosure. While said action was pending Wolter made a transfer to his sister of practically all other property owned by him. Plaintiff obtained a deficiency judgment of some $5,000, and, execution being return unsatisfied, brought this action. Whether there was any consideration from the sister was an issue at the trial, but on appeal the court said that issue need not be considered, as plaintiff had failed to show that Wolter's indebtedness to him was not fully secured. Wolter testified that the mortgaged property was worth $31,000, and plaintiff made no showing as to its value (except that he had a deficiency judgment). The court said that the mere showing that plaintiff purchased the property on foreclosure sale for an amount inadequate to discharge the indebtedness was insufficient, citing *McMillan* v. *McMillan*, 42 Idaho 270 [245 P. 98], and *Craig* v. *Partridge*, 48 Idaho 471 [282 P. 940].

*Fross* v. *Wotton*, 3 Cal.2d 384 [44 P.2d 350], is also pertinent. There a trust deed securing a note for $12,500 was given by defendants in August, 1929, in connection with the purchase of certain property. On January 11, 1930, notice of default and election to sell was given defendants. On February 21st defendants conveyed to a sister four parcels of land and declared a homestead on their one remaining piece of real property. Plaintiff sold under his trust deed for about $1,500 and thereafter secured a deficiency judgment of $12,239.36 and costs; he then instituted action to set aside the transfers to the sister, as having been made in fraud of creditors. On June 16, 1931, the Wottons were adjudged bankrupts on a voluntary petition. Fross filed the only substantial claim and the trustee in bankruptcy intervened. A judgment of nonsuit was entered and the intervenor appealed. Respondent contended that there was a complete absence of proof that the property was conveyed with intent to defraud

creditors, and that the judgment of nonsuit should be sustained because of the failure to show that the security for the note was insufficient at the time the conveyances were made. Reliance was had upon the Blenkiron and McMillan cases, *supra*. The court said that what they held in those cases was that where there is no other evidence to show a fraudulent intent in making the conveyance complained of, or where reliance is had upon a presumption of fraud from the making of a voluntary conveyance during or in contemplation of insolvency, and the only debt is a secured debt, the security must be shown to be insufficient to meet the obligation at the time the conveyance was made. And it was held that under the authority of the Blenkiron case the failure of plaintiff to make a showing of the insufficiency of the security at the time of the conveyance was fatal to his contention that he had made out a case under section 3442 of the Civil Code. The court then considered whether on the record a case of *actual* fraud had been made out under section 2439 of the Civil Code, and on the ground that it had, the judgment was reversed.

In *Hibernia Savings & Loan Society* v. *Belcher,* 4 Cal.2d 268 [48 P.2d 681], it appeared that on the day before a foreclosure sale under a mortgage the Ellis Estate Company, mortgagor, made an assignment of rents to defendant Belcher. Plaintiff, having secured a deficiency judgment, sought to set aside the assignment on the ground that it was without consideration and made with intent to defraud creditors. The trial court found the assignment had been made in good faith, in payment for legal services. The appellate court held that plaintiff must fail as there was evidence that the value of the mortgaged premises was in excess of the indebtedness which it secured, and plaintiff introduced no evidence to show that at the time the assignment was made or at the time of the action its value had declined to the extent that it was worth less than the indebtedness to plaintiff. (Citing *Norton* v. *Blenkiron, supra.*)

In *Cain* v. *Richmond,* 126 Cal.App. 254 [14 P.2d 546], an action brought to quiet title to property attached by defendants, and by them alleged to have been acquired by plaintiff through fraudulent conveyances after recovery of a deficiency judgment against plaintiff's grantor on sale of property under a trust deed, the question on appeal was the sufficiency of the evidence to sustain the judgment quieting plaintiff's title. Conveyance was to a daughter and her husband, and

it was contended to have been without consideration and to have rendered the grantor insolvent. On appeal the court said that whether a conveyance is with intent to defraud creditors is a question of fact (12 Cal.Jur. 1045, sec. 87) except that under section 3442 as amended in 1895, insolvency and lack of consideration were made conclusive evidence of intent to defraud creditors. It said, however, that the price of the mortgaged property was presumed to be its value, in the absence of other evidence of value, and as it exceeded the indebtedness leaving an equity in the grantors, they could not be said to have been insolvent.

In the instant case there was not a failure of plaintiff to adduce evidence that the value of the Newcastle Ranch property was less than the indebtedness upon it at the time of the transfers by Mr. and Mrs. Towers. Apparently recognizing the applicability of the foregoing cases, plaintiff introduced evidence of its value. One of his witnesses, Mr. Wisner, district manager of California Lands, Incorporated, which handled the bank's properties, appraised it at $4,107 (exclusive of mineral values); he also testified that they sold the property for $2,500, but reserved oil, gas and mineral rights. Another witness for plaintiff appraised it at $3,650 (exclusive of mineral values), and a third at $3,267 (also exclusive of mineral values).

But defendants also introduced evidence of value. Defendant W. R. Towers testified that prior to the sale, Mr. Kellogg, manager of the Newcastle Branch of the bank, told him he had recommended that the bank take a deed to the property in satisfaction of the indebtedness against it, and that such a deed was drawn up; that Kellogg said the ranch was worth the debt, that he would gladly give $10,000 for it, and also that he was interested in the mining values. Towers also testified that he believed the ranch without the mineral values was worth $15,000 in 1938, as it was then in good shape; that he had asked $20,000 for the mining rights. A mining engineer called by defendants, who had taken assays from the property, fixed the cash value of the mineral rights at $2,500, and said that he had discussed with Mr. Werner, of California Lands, Incorporated, the purchasing of the property, and that Werner wanted $17,500 for the mineral rights on a ten year bond and lease. Another witness for defendants, a former Federal Land Bank appraiser, said that if the ranch was in fair condition in June, 1938, he would say its value would

be $12,000 or a little better. Another witness for defendant, who had mined a portion of the ranch, said the "forty" they were on had a fair value of five or six thousand dollars. Another witness fixed the market value of the property in 1938 at $10,000 and testified that he, too, had discussed the purchase of the ranch with Mr. Werner in January, 1938, and the bank then wanted $10,000 for it, reserving mineral rights. R. W. Towers, brother of defendant Towers, familiar with fruit ranches in that neighborhood, fixed the market value in January, 1938, at between $14,000 and $15,000; and another former appraiser for the Federal Land Bank fixed a value of $12,250, exclusive of mineral values.

There was, therefore, a sharp conflict of evidence as to the value of the property at the time the transfers were made; but it was for the trial court to weigh the evidence, and it cannot be said that its implied finding that the value of the ranch exceeded the indebtedness against it is without substantial support in the evidence. That the bank considered its security adequate may be inferred not only from the evidence that its representative had so stated, but from the fact that though the original indebtedness was incurred in 1930, and though interest and taxes had not been paid since the early part of 1936, it delayed foreclosure until December, 1937, after Mrs. Towers' inheritance.

Appellant particularly contends that the transfers must be held to have been in contemplation of insolvency on the part of Mrs. Towers, because she was subsequently without means and because she owned no interest in the Newcastle Ranch property. However, in support of the finding of the trial court we note that after the three transfers made by her and her husband to the daughter, Mrs. Towers still had the Auburn property valued at $2,500 and a bond for $1,000 which came from her mother's estate. It is true that $1,250 was borrowed on the security of the Auburn property but this money was used to clear the indebtedness on her automobile and to pay all other outstanding debts except attorney's fees, which were then secured by a chattel mortgage on the automobile. Not until after the transfers to the daughter was the declaration of homestead on the Auburn property made. It is true that Mrs. Towers owned no interest in the Newcastle Ranch, but it is conceded by appellant that her obligation on the note was only secondary, and as the court has found that the security therefor was sufficient, her transfers did not endanger the mortgage security; and

it cannot be said as a matter of law that said transfers were made by her in contemplation of insolvency. Her transfers were not fraudulent any more than her husband's if the security was sufficient to pay the debt. The court said in *Norton* v. *Blenkiron, supra,* that "it was essential for plaintiff to show that defendant's indebtedness to him was not fully secured in order to establish his right to have the conveyances set aside as fraudulent." The validity of the transfers did not depend upon future events. (27 C.J. 498.) And it was said in *Fross* v. *Wotton, supra,* at page 388, that amply secured debts are not to be taken into consideration for the purpose of determining whether the financial condition of a grantor renders a conveyance presumptively fraudulent as to existing creditors.

Appellant cites and relies upon *Allee* v. *Shay,* 92 Cal.App. 749 [268 P. 962], *Keeley* v. *Anderson,* 14 Cal.App.2d 467 [58 P.2d 410], and *Knox* v. *Blanckenburg,* 28 Cal.App. 298 [152 P. 59], but they are not in point as the facts are not comparable and in none of them was the debt secured.

The judgment is affirmed.

Peek, J., and Thompson, J., concurred.

A petition for a rehearing was denied September 18, 1943, and appellant's petition for a hearing by the Supreme Court was denied October 18, 1943.