[Civ. No. 16699.   Second Dist., Div. Three.   July 15, 1949.]

JOHN E. MILLER, Appellant, v. JOSEPH M. KEEGAN et al., Defendants; IVA LEE KEEGAN, Respondent.

Geo. W. Rochester for Appellant.

Edwin F. Franke, Edward J. Owen and Bernard Rose for Respondent.

SHINN, P. J. — Plaintiff's predecessor in interest was adjudged bankrupt in October, 1942, and an indebtedness of defendant Joseph M. Keegan was found to be an asset of the bankrupt. On September 22, 1943, the sum of $741.93 was found by the bankruptcy court to be due and owing from said defendant. Plaintiff acquired this obligation for value in February, 1946, and obtained judgment thereon in the Municipal Court of Los Angeles on July 26, 1946. Thereafter execution was returned wholly unsatisfied, and after examination in supplementary proceedings the judgment debtor, Joseph M. Keegan, was discharged by the court, no property being found. Plaintiff, acting as his own attorney, thereupon commenced the present action against Joseph M. Keegan and Iva Lee Keegan for the purpose of setting aside an alleged fraudulent conveyance of real property from the former to the latter. Defendant Joseph M. Keegan having failed to answer, his default was duly entered and the trial proceeded as to respondent, Iva Lee Keegan, alone. Judgment was rendered against defendant, Joseph M. Keegan, in the sum of $899.04 and in favor of respondent, Iva Lee Keegan, declaring the real property in controversy to be her sole and separate property free and clear from any claims of plaintiff. The present appeal is taken from the portion of the judgment in favor of Iva Lee Keegan and presents chiefly the question whether the findings of the trial court, upon which the judgment rests, are supported by the evidence.

Evidence of the following facts was presented at the trial. Prior to November 22, 1944, the two defendants and their children had resided in their home, acquired subsequent to their marriage, on North Electric Street in Alhambra. Marital

discord had developed due principally to Mr. Keegan's failure to provide sufficiently for the family, and his habit of intemperance. They agreed that respondent was to seek a divorce, and that she was to have custody of the children, the household furnishings, and the house subject to the encumbrance of a mortgage which was about to be foreclosed. Mr. Keegan, in turn, was to have his automobile and "whatever else we had." Respondent testified on direct examination that since it was agreed that she was to receive the house she was "not going to make any demand" upon her husband for herself in the divorce proceedings. On cross-examination she testified that she "didn't make any special agreement not to ask for" alimony or child support; that she "didn't ask for any alimony or any support because at the time he had nothing and couldn't support me if I had"; and that she didn't give Mr. Keegan anything for the transfer to her of his interest in the Electric Street property. This testimony was reaffirmed on redirect examination. Although her complaint for divorce did contain a prayer for child support she testified that her attorney inserted it without her knowledge. She was awarded neither alimony nor support by the decree as rendered. On November 22, 1944, Mr. Keegan "signed the [Electric Street] property over" to respondent by a written instrument which was not introduced in evidence, was evidently never recorded, and which respondent kept in her safe deposit box. Subsequently, on the same day, Mr. and Mrs. Keegan together executed a deed conveying the Electric Street property to Harry W. Benstead, a real estate agent, and his wife, for a net consideration of about $1,700. This sum was applied, as part of the same transaction, to the simultaneous purchase from the Bensteads of the Larch Street house in Alhambra where respondent now resides and which is the subject of this action. Although Joseph M. Keegan joined with the Bensteads as grantor in the latter conveyance, which was to respondent as sole grantee, the only evidence in the record is that he had no previously existing interest in the Larch Street property. Respondent testified that at the time of the foregoing transactions she knew of the indebtedness of her husband to plaintiff's predecessor, but did not know any of the details thereof.

The trial court made findings to the effect that the indebtedness of Joseph M. Keegan to plaintiff's predecessor was a personal and not a "community debt"; the Electric Street property had been jointly owned by Mr. and Mrs. Keegan;

Joseph M. Keegan, "in consideration of defendant, Iva Lee Keegan, receiving no alimony in the aforementioned divorce, did give up all of his right, title and interest in said [Electric Street] lot to said defendant, Iva Lee Keegan"; Joseph M. Keegan had no right, title or interest in the Larch Street property; and Iva Lee Keegan acquired title to the Larch Street property as her sole and separate property and paid a good and valuable consideration therefor.

The findings that the indebtedness was an obligation personal to Mr. Keegan and not a "community debt," for which the wife also would be liable, are supported by the evidence. Respondent testified that she did not participate in the loan; she never received any of the proceeds thereof; Mr. Keegan had borrowed it himself; and the money he received "mostly went for his drinking." During 1943, Mr. Keegan gave her just enough money to buy food and keep the house running but never any large sums. He was at that time operating a barber shop. The family was supported in part by respondent from her earnings caring for neighbors' children and from assistance given by her relatives. It could have been inferred from the evidence that Mr. Keegan borrowed the money from plaintiff's predecessor for his personal use and benefit and that it was not a debt incurred for necessaries or for the benefit of respondent or the community. Accordingly the judgment rendered was proper insofar as it may have determined that respondent's separate property was in no way liable for the satisfaction of plaintiff's claim. (Civ. Code, § 171; 3 Cal.Jur. 10-Yr.Supp. § 142, p. 659.)

Plaintiff strenuously urges that there is no support in the evidence for the finding that Mr. Keegan conveyed his interest in the Electric Street lot in consideration of respondent receiving no alimony, nor for the ultimate findings, derived therefrom, that Mr. Keegan had no interest in the Larch Street property and that respondent acquired those premises for a valuable consideration and as her separate property. Although a reading of the record reveals but little to support these findings, we need not decide the question, for we think the judgment must be affirmed in any event.

The record is devoid of any evidence of actual intent to defraud creditors by means of the transactions between Mr. and Mrs. Keegan. We do not understand plaintiff to contend to the contrary. Although his complaint tendered the issue of actual fraud plaintiff expressly abandoned that theory of his case during the course of the trial. Of necessity plain-

tiff must and does rely upon the provisions of the Uniform Fraudulent Conveyance Act (Civ. Code, §§ 3439.01 to 3439.13 incl.) and, in particular, upon section 3439.04 thereof which reads: ''Every conveyance made and every obligation incurred by a person *who is or will be thereby rendered insolvent* is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.'' (Emphasis added.) It is clear, and plaintiff, by directly tendering the issue in his complaint must be deemed to have conceded, that proof of insolvency either at the time of the transfer or resulting therefrom is a prerequisite to relief under the quoted section. (*Cain* v. *Richmond,* 126 Cal.App. 254, 260 [14 P.2d 546]; *Kirkpatrick* v. *Towers,* 60 Cal.App.2d 251 [140 P.2d 681].) The burden of such proof rests upon the party attacking the conveyance. (*Parker* v. *Riddell,* 41 Cal.App.2d 908, 913 [108 P.2d 88]; *Parkinson Bros. Co.* v. *Figel,* 24 Cal.App. 701, 711 [142 P. 135]; *Morgentham* v. *Harris,* 12 Cal. 245, 247.) ■ Although, as we have indicated, the issue of insolvency was raised in the complaint and denied by the answer, the court made no finding thereon. We are of the opinion, however, for reasons hereinafter set forth, that a finding that Joseph M. Keegan was insolvent at the time of, or was rendered insolvent by, the transactions whereby respondent acquired the Larch Street property, would not have been supported by the evidence. Accordingly the failure of the court to make a finding thereon was not prejudicial to plaintiff, and the judgment for respondent may be affirmed for want of proof of an element essential to recovery by plaintiff. (See *McLane* v. *Storr,* 75 Cal.App.2d 459, 464 [171 P.2d 534]; *Fay Securities Co.* v. *Mortgage Guar. Co.,* 37 Cal.App.2d 637, 641 [100 P.2d 344]; *Hoover* v. *Wasson,* 11 Cal.App. 589, 596 [105 P. 945]; *People* v. *Center,* 66 Cal. 551, 564 [5 P. 263, 6 P. 481].)

■ The record contains no evidence whatsoever tending to prove Mr. Keegan's insolvency in the statutory sense, that is, that the fair salable value of his assets on November 22, 1944, or within a reasonable time thereafter, was insufficient to pay his then existing debts as they matured. (Civ. Code, § 3439.02.) The only testimony relating to his financial affairs consists of respondent's statements that ''he was deeply in debt, and was drinking, and mismanaging his money. . . . He wasn't keeping up the payments on the home or his barber shop or paying anybody at all,'' and that she didn't seek ali-

852

mony because "he had nothing and couldn't support me if I had." ■ Mere statements of indebtedness are not enough to prove insolvency. (See *Shasta Lumber Co.* v. *McCoy*, 85 Cal.App. 468, 473 [259 P. 965].) Likewise neither a failure to keep up installment payments, particularly on secured obligations, nor an inability to provide current family living expenses, is sufficient standing alone to warrant a conclusion of insolvency. Neither circumstance is inconsistent with a status of solvency within the meaning of the statute.

■ As a general rule "solvency and not insolvency is presumed." (*Hasenjeager* v. *Voth*, 91 Cal.App. 394, 397 [267 P. 146].) To overcome this presumption a fair interpretation of the statute requires some basis in evidence for determining that the amount of the debtor's obligations exceeded the then present fair salable value of his nonexempt assets. Such a basis is entirely wanting here. ■ The extent of Mr. Keegan's debts is not shown, except for the $741.93 owed to plaintiff's predecessor. In respect to his assets, the record reveals that prior to the transfer to respondent, an equity of some $1,700 remained in the Electric Street property; and subsequent thereto, Mr. Keegan was still possessed of an automobile, the value of which is not shown, and evidently of other assets as well. Although a mortgage or lien on his barber shop had been foreclosed, it would be permissible to infer from respondent's testimony that he retained some equity therein which could have been salvaged. Furthermore, Mr. Keegan was working, part time at least, in 1944 and there is some evidence that he was also receiving a veteran's pension. There is nothing in the record from which it could logically be inferred that his assets did not exceed his liabilities. The value of the automobile alone might have been enough to satisfy plaintiff's claim had a timely attempt been made to enforce it. The return of execution unsatisfied on August 2, 1946, of course, has no legitimate tendency to prove insolvency on November 22, 1944, nearly two years before. (*Cf.*, *Windhaus* v. *Bootz*, 92 Cal. 617 [28 P. 557].) ■ Nor may plaintiff rely upon the admissions of the material allegations of plaintiff's complaint implied from Mr. Keegan's default, to rectify an otherwise fatal hiatus in the proof of his case against Iva Lee Keegan. ■ It is an established principle of law that admissions implied from the default of one defendant ordinarily are not binding upon a codefendant who, by answering, expressly denies and places in issue the truth of the allegations thus admitted by the absent party. (*The Mary*,

9 Cranch 126 [3 L.Ed. 678, 684]; *Chamblin* v. *Chamblin,* 362 Ill. 588 [1 N.E.2d 73, 75, 104 A.L.R. 1183]; *Fawkes* v. *National Refining Co.,* 341 Mo. 630 [108 S.W.2d 7, 10]; *Glos* v. *Swanson,* 227 Ill. 179 [81 N.E. 386, 387].)

Plaintiff also claims that the court erred in denying his motion to strike certain paragraphs from respondent's answer and in permitting respondent to orally amend the said paragraphs at the commencement of the trial. The contention is without merit. The objections to the answer as pleaded were technical and formal only, and the record does not disclose any abuse of discretion by the trial court in the matter. In view of the conclusions we have reached, certain other questions discussed in the briefs require no decision.

The judgment is affirmed.

Wood, J., and Vallée, J., concurred.