[Civ. No. 4945.   Fourth Dist.   May 6, 1955.]

R. J. HOLCOMB et al., Respondents, v. JOHN F. NUNES et al., Appellants.

Matt Goldstein and George A. Schroeder for Appellants.

David E. Peckinpah, Denver C. Peckinpah, Charles F. Hamlin and L. N. Barber for Respondents.

MUSSELL, J.—This is an action in which plaintiffs in their complaint and defendants in their cross-complaint seek to quiet title to 40 acres of ranch property in Fresno County. The ranch was purchased by F. S. Jacobsen, also known as S. P. Holt, on August 8, 1946, for the sum of $18,000, subject to a trust deed for $7,600.   On March 19, 1947, said Holt deeded the property to defendants John F. Nunes and his wife and the deed was recorded on the same day.   On October 22, 1951, the Fresno Irrigation District deeded the same property to defendant John F. Nunes and his wife, and that deed was recorded on February 20, 1952.   Nunes and his wife claim title by virtue of these two deeds and plaintiffs' claim of

title is based on a sheriff's deed to them dated July 23, 1951, executed pursuant to a sale under execution on a judgment which said plaintiffs obtained against Jacobsen for the sum of $3,100, and costs, on October 22, 1948.

It was the contention of plaintiffs at the trial that there was collusion between Jacobsen and Nunes for the purpose of enabling Jacobsen to evade liability arising out of a transaction about to be consummated between Jacobsen and the plaintiffs and that Jacobsen had voluntarily transferred title to the property to Nunes. The trial court entered an interlocutory judgment in favor of plaintiffs and defendants John F. Nunes and his wife appeal therefrom. Defendant Jacobsen defaulted in the action.

Plaintiff J. P. Holcomb testified that he became acquainted with Jacobsen in 1946; that there were some preliminary discussions relative to the buying of cattle by plaintiff and the feeding of them by Jacobsen; that Jacobsen had lots of pasture and two ranches but had no money; that he entered into definite discussions with Jacobsen relative to this matter in April, 1947; that along about February, 1947, plaintiff visited the property involved and had a discussion with Jacobsen about a business arrangement; that Jacobsen had some young stock on the ranch; that the said stock was mortgaged and Jacobsen said that if plaintiff would pay off the note, Jacobsen would bring the stock into "springing stage"; that plaintiff would sell them and they would split the profits; that plaintiff stated he would talk it over with his wife and the following day he told Jacobsen it was agreeable to his wife; that Jacobsen did not have any ready cash; that "all he had was pasture and hay and everything, feed"; that he had no written agreement with Jacobsen and that the first time he advanced any money to him was on April 7, 1947, at which time he gave Jacobsen $1,500 to pay off a note against some of his cattle; that Jacobsen gave him a bill of sale for this stock and agreed to feed them and furnish the labor; that it was agreed that plaintiff was to sell said stock, take his $1,500 out, and retain 50 per cent of the net profit; that on April 23, 1947, he gave Jacobsen $2,000 for a bill of sale for "another bunch of cows" to be fed and sold in the same manner; that on May 15, 1947, he gave Jacobsen a check for $462.50 to purchase four cows and four calves at an auction; that these animals were to be handled in the same manner as those previously purchased. Holcomb further testified that

Jacobsen told him that he owned a ranch in Riverbend containing some 600 to 650 acres.

Plaintiff Hazel K. Barcus (formerly Holcomb) testified substantially to the same facts as her former husband and there was no contradiction between them with respect to the dates when the money was paid to Jacobsen or as to the purposes for which funds were so advanced.

Plaintiffs filed suit against Jacobsen in the Superior Court of Fresno County and caused an attachment to be levied on the property here involved on May 29, 1947. Thereafter plaintiffs recovered judgment against Jacobsen for the sum of $3,100 and costs. The record does not disclose the items making up this judgment or the facts of that case. Execution was issued on the judgment, the property was sold, and a sheriff's deed, upon which plaintiffs rely, was executed to them on July 23, 1951.

Defendant John F. Nunes testified and the record shows that Jacobsen gave him a deed to the property involved on March 19, 1947. He further testified that Jacobsen's son was married to his (Nunes) daughter prior to 1947; that Jacobsen had a ranch on Teilman Place in Fresno County where he maintained a dairy; that he, Nunes, supplied all labor in connection with milking the cows on this dairy and supplied the hay to feed said cows prior to March 19, 1947; that prior to this date he had supplied Jacobsen with approximately 200 tons of hay which he, Nunes, had grown on his ranch on West Belmont in Fresno County; that he valued the hay at $20 per ton and that he had not been paid for it; that he had worked for Jacobsen for two years prior to March 19, 1947, milking cows, and that Jacobsen had promised to pay him $120 per month for these services; that Jacobsen had paid him only $200 during the entire two-year period; that he kept asking Jacobsen for money and that in 1947 Jacobsen said to him, "I ain't got no money. The only way I can pay you is you take the property"; that the property involved was deeded to him on March 19, 1947, by Jacobsen in payment of Jacobsen's past obligations to him; that at the time he took over the place there was a balance of $7,200 due on a deed of trust affecting the property, and that the water tax of approximately $100 was not paid; that his daughter and her husband occupied the premises from the time he acquired it from Jacobsen and that they paid all the taxes and made substantial improvements to the property; that he made the payments on the note secured by the

deed of trust at the rate of $200 every six months, together with accumulated interest at 5 per cent per annum, and that the balance of the principal due on said note had been reduced to $4,400 at the time of trial; that he had been in possession of the property since March 19, 1947, by having his daughter and son-in-law live on it.

The evidence also shows that the 1948 irrigation tax imposed for the Fresno Irrigation District had not been paid and that on September 20, 1951, the tax collector issued to the district a tax deed to the property; that said district conveyed it to the defendans John F. Nunes and Eva Nunes by deed dated October 22, 1951.

The trial court found that the conveyance of said real property from defendant Jacobsen, also known as Holt, to the defendant John F. Nunes and his wife was made without fair consideration; that the property remaining in the hands of said defendant Jacobsen, after the said conveyance, was an unreasonably small capital for the transaction in which said defendant was about to engage with plaintiffs; that the defendants Nunes and his wife accepted the said conveyance without fraudulent intent; that the amount of repayment for which said defendants are entitled to hold the property as security was not put in issue by the pleadings in the action and could not be ascertained from the evidence; that except for the right of the defendants John F. Nunes and his wife to hold the said property as security for any amount to which they may be entitled to repayment on account of the purchase of said real property, the defendants have not, nor has either or any of them, any right, title or interest in or to said real property, and "that the allegations of the cross-complaint not expressly found herein to be true are found to be untrue." The court then concluded that a further hearing should be had for the purpose of determining the amount, if any, to which defendants John F. Nunes and his wife may be entitled as repayment of the consideration for the said conveyance. Judgment was entered that plaintiffs are the owners of the property and that all claims of said defendants are invalid and groundless, provided the said defendants Nunes should be entitled to hold possession of said property as security for any repayment to which they may be entitled under the provisions of section 3439.09 of the Civil Code.

Section 3439.05 of the Civil Code, upon which the trial court based the interlocutory judgment herein, reads as follows:

"Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent."

In *Hansen* v. *Cramer,* 39 Cal.2d 321, 324-325 [245 P.2d 1059, 30 A.L.R.2d 1204], the court held that:

"The test in determining the propriety of a creditor's challenge of a conveyance for lack of a 'fair consideration' within the meaning of the act depends on whether the debtor is thereby rendered execution proof, and the existence of any intent of fraud on the part of either the grantor or the grantee is an immaterial factor. (*Merchants' Bank* v. *Page* (Md.) *supra,* [147 Md. 607] 128 A. 272, 273.)"

In the instant case while the record shows that plaintiffs recovered a judgment against the appellants, the evidence does not show that Jacobsen was rendered judgment proof by the conveyance of the property involved on March 19, 1947.

As stated by the trial court in its memorandum of opinion filed herein, there was no actual fraudulent intent or actual fraud shown with respect to the conveyance made from Jacobsen to the defendants. There was no showing that Jacobsen was insolvent at the time of this conveyance and no showing of the amounts he owed, if any, or the aggregate of his assets on March 19, 1947. The evidence shows that plaintiffs "Looked solely to the stock and feed as Jacobsen's contribution for the successful termination of their investment." As further stated by the trial court, "There is nothing to indicate that the ownership of the property as such is material. There is nothing to indicate that the feed had been denied to the use of the joint adventure."

We conclude that the finding "That the property remaining in the hands of said defendant Jacobsen after the said conveyance (March 19, 1947) was an unreasonably small capital for the transaction in which the said defendant was about to engage with plaintiffs" is not supported by the evidence. The uncontradicted evidence is that plaintiffs agreed to buy the stock and Jacobsen agreed to care for it and feed it. He was not required to advance any money. The evidence indicates that Jacobsen had a 600- or 650-acre ranch in Riverbend and it is not shown that it was insufficient to provide the feed and pasture for the stock involved in these three trans-

actions between plaintiffs and defendant Jacobsen. Furthermore, there was no evidence offered as to the value of this acreage.

In *Miller* v. *Keegan*, 92 Cal.App.2d 846, 852 [207 P.2d 1073], the court said:

"As a general rule 'solvency and not insolvency is presumed.' (*Hasenjeager* v. *Voth*, 91 Cal.App. 394, 397 [267 P. 146].) To overcome this presumption a fair interpretation of the statute requires some basis in evidence for determining that the amount of the debtor's obligations exceeded the then present fair salable value of his nonexempt assets. Such a basis is entirely wanting here."

In the instant case the burden was upon plaintiffs to show that defendant Jacobsen was left with an "unreasonably small capital," after executing the conveyance to Nunes and his wife, with which to engage in the transactions involved. This is not shown by the record. The trial court's finding that defendant Jacobsen was "about" to engage in a business transaction on March 19, 1947, for which the property remaining in his hands after the conveyance involved is an unreasonably small capital, lacks sufficient evidentiary support. Plaintiff R. J. Holcomb testified that he entered into definite discussion with Jacobsen relative to engaging in transactions involving the purchase of stock which Jacobsen was to feed in the month of April, 1947, and after the deed to Nunes and his wife had been executed and recorded. There was no contract entered into by plaintiffs and Jacobsen prior to the date of this deed and there was no date agreed upon for the purchase of any of Jacobsen's stock prior to April 7, 1947. There were three separate transactions, each involving separate purchases of stock by plaintiffs, one on April 7, 1947, when plaintiffs gave Jacobsen $1,500 to pay off a note and took back a bill of sale for the stock, one on April 23, 1947, and the last on May 15, 1947. By these purchases plaintiffs became the owners of the stock, received bills of sale therefor and had the right to sell any or all of said stock.

The land involved herein was sold to the Fresno Irrigation District by the tax collector for default in payment of assessments, which became due in two installments, one on the first Monday in December, 1947, and the other on the first Monday in June, 1948. The property was deeded to the district by the collector on September 15, 1951, and the deed thereto was recorded September 21, 1951. This deed was issued to the district pursuant to sections 26275 to 26280

of the Water Code. Said section 26275 provides for the delivery of a collector's deed to the district where property sold for delinquent assessments has not been redeemed and three years have elapsed from the date of its sale. Section 26300 of said code provides as follows:

"*Conveyance of absolute title free of encumbrances: Exception: Prima facie evidence.* A collector's deed conveys to the grantee free of all encumbrances the absolute title to the property described in it except when the land is owned by the United States or this State, in which case it is prima facie evidence of the right of possession."

The following section, 26301, defines the rights of the district as follows:

"*Rights of district to which property conveyed.* Where property has been conveyed to a district by a collector's deed, the district shall have the same rights in respect to the property and its rents, issues, and profits as a private purchaser."

And section 26303 provides that:

"*Conclusive evidence of regularity of proceedings.* Except as against actual fraud a collector's deed acknowledged or proved is conclusive evidence of the regularity of all of the proceedings from the assessment by the assessor, inclusive, up to the execution of the deed."

In the instant case plaintiffs offered no evidence at the trial attacking the validity of the deed to the district or its effectiveness or irregularity. The record shows the district acquired absolute title to the property. On October 22, 1951, the district sold and conveyed the property to appellants and there is no showing, pleading or proof of fraud in this transaction.

In *Dowd* v. *Glenn,* 54 Cal.App.2d 748, 753 [129 P.2d 964], the court said:

"Referring to a deed issued by the collector of an irrigation district, section 48 (Stats. 1931, p. 441) provides: 'Such deed duly acknowledged or proved is (except as against actual fraud) conclusive evidence of the regularity of all the proceedings from the assessment by the assessor, inclusive, up to the execution of the deed. The deed conveys to the grantee the absolute title to the lands described therein free of all encumbrances, except when the land is owned by the United States, or this state, in which case it is prima facie evidence of the right of possession.' (Deering's Gen. Laws, Act 3854, § 48, p. 1834.) In 1937 (Stats. 1937, p. 379),

section 47 was amended to include the following provision: 'The district may also sell, convey, lease, give and also take options upon, and issue and take contracts of sale upon and otherwise deal with such property including sale of the same to a former owner or holder of said property, on such terms and at such price as may be approved by the board of directors.' (Deering's Gen. Laws, Act 3854, § 47, p. 1832.) Reading the section as amended, it must be determined that the Legislature has formulated a policy of permitting a former owner to purchase land from an irrigation district upon terms approved by the board of directors, and that the deed thereupon given is conclusive evidence of the regularity of the proceeding 'except as against actual fraud.' "

Plaintiffs, although they claim to have owned the property since April 12, 1949, did not attempt to pay any of the taxes or assessments thereon or to acquire title from the district. There was no confidential relationship between appellants and plaintiffs and since no actual fraud was shown, appellants acquired absolute title by the conveyance to them from the district.

The judgment is reversed.

Barnard, P. J., and Griffin, J., concurred.